UNITED STATES of America, Appellee,

v.

Robert Joseph LLINAS, Appellant.

No. 79–5095

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1979.

Rehearing Denied Oct. 19, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprise, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Larry G. Turner, Gainesville, Fla., for appellant.

Jack V. Eskenazi, U.S. Atty., Alan L. Weisberg, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Robert Joseph Llinas was convicted after a jury trial of conspiracy to import cocaine into the United States and conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. §§ 963, 846. At trial, the principal incriminating evidence against appellant consisted of two tape recordings of conversations between appellant and Cesar Riascos-Velasquez, a native of Colombia. Llinas contends the recordings should have been·excluded from evidence (1) because they were made without the valid consent of Riascos, and (2) because they contain inaudible portions rendering them fatally unreliable.

Appellant's claims of error are without merit and we affirm.

### I.

Llinas first contends that his incriminating taped conversations with Riascos should be excluded from evidence as Riascos did not voluntarily consent to the recording. 18 U.S.C. § 2511(2)(c) provides that wire or oral communications may be intercepted without a warrant where "one of the parties to the communication has given prior consent to such interception." The tape was properly admitted into evidence, therefore, if Riascos consented to the surveillance and recording of the conversation.

Evidence introduced at trial established that Riascos was arrested at the Miami International Airport by Federal Drug Enforcement Administration (DEA) agents after he claimed a package which customs officials had determined contained a large quantity of cocaine. Immediately after his arrest, Riascos was given Miranda[1] warnings in both Spanish and English. He did not request the presence of an attorney.

Riascos was advised by DEA agents that any cooperation by him with government investigators would be made known to the U.S. Attorney and the courts. Immediately thereafter, Riascos explained his and Llinas' involvement in the cocaine conspiracy. Riascos waived in writing his right to be promptly brought before a U.S. magistrate, and agreed to make a controlled delivery of the cocaine to Llinas in Gainesville, Florida.

Riascos was taken by car to Gainesville, where he telephoned Llinas from his hotel room. Llinas arrived sometime later, and was arrested as he left the hotel carrying a quantity of cocaine. The telephone and hotel room conversations, recorded by DEA agents, constitute the principal evidence against Llinas.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Llinas, both in a pretrial suppression hearing and now on appeal, argues that the tapes of his conversations with Riascos are inadmissible as Riascos did not voluntarily consent to the electronic recording. In essence, appellant contends that the inherently coercive nature of arrest and interrogation, when combined with the fact that Riascos was an alien unaccustomed to the U. S. legal system, establishes lack of consent as a matter of law.

■ After a lengthy pretrial suppression hearing, the U. S. magistrate recommended that the District Court find the recordings were made voluntarily.[2] The District Court adopted the magistrate's findings. The task of this Court is limited in these circumstances to determining whether "there was sufficient evidence on the record to justify the District Court's conclusion that [Riascos] voluntarily consented to the government's interception of the conversation." *United States v. Rangel*, 5 Cir., 1974, 488 F.2d 871, 872. Furthermore, we must accept the trial court's findings of fact on a motion to suppress unless they are clearly erroneous. *United States v. Juarez*, 5 Cir., 1978, 573 F.2d 267, 273. *See also United States v. Griffin*, 5 Cir., 1977, 555 F.2d 1323, 1324.

There is sufficient evidence of record here to justify the conclusion that Riascos consented to the interception of his conversations with Llinas. The record contains no evidence of undue pressure, threats, or inducements. Riascos was advised of his rights and options in both English and Spanish. He had at least twelve hours to ponder his decision to cooperate with the DEA agents. As for the DEA agents' promises to make Riascos' cooperation known to the U.S. attorney and the court, similar promises were held not to be coercion in *United States v. Juarez, supra*, 573 F.2d at 278. Raised expectations and hopes for leniency do not amount to coercion. *Id.*

## II.

Llinas next contends that inaudible portions of the tape recording of the conversation in the hotel room rendered the tape so unreliable as to be inadmissible at trial. Furthermore, because the original conversation was in Spanish, Llinas contends that the jury's use of an English transcription constitutes reversible error as the translation was inaccurate and the jury, most of the members of which were not Spanish-speaking, could not reconcile alleged discrepancies between the transcription and the recording itself.

■ Petitioner's argument regarding the inaudibility of the tape is without merit. Tape recordings which are only partially unintelligible are admissible unless those portions are so substantial as to render the recording as a whole untrustworthy. *United States v. Wilson*, 5 Cir., 1978, 578 F.2d 67, 69. The determination as to the trustworthiness of a tape recording is left to the sound discretion of the trial judge. *United States v. Avila*, 5 Cir., 1971, 443 F.2d 792, 795, *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258. *See also United States v. Wilson, supra*, 578 F.2d at 69; *United States v. Onori*, 5 Cir., 1976, 535 F.2d 938, 946.

■ Notwithstanding the inaudible portions of the recording, the transcript as a whole clearly reveals a highly incriminating conversation of a conspiratorial nature. During the conversation appellant sought information from Riascos regarding the condition of the package of cocaine when Riascos picked it up at the airport in Miami, the possibility that customs agents may have opened the package, messages given by the Colombians who sent the cocaine, and a strike by Colombian customs officers. At other times during the conversation appellant expressed concern about the danger of conducting narcotics transactions over the phone, the difficulties he was experienc-

---

2. The U. S. magistrate reported to the District Court as follows:

Having carefully listened to the testimony and observed the demeanor of the witnesses, the magistrate recommends that the Court find that defendant Cesar Riascos-Velasquez voluntarily consented to the use of recording devices in this case.

ing paying his Colombian connections for the cocaine, the fact that he did not have much time to talk, and the existence of 180 federal agents in the Gainesville area. The flow of the conversation is not difficult to follow, and it is quite obvious that the conversation is substantially intelligible. The trial court did not err in admitting the tape. *United States v. Wilson, supra,* 578 F.2d at 69.

■ Petitioner's final arguments, that the English translation of the tape was inaccurate and that the jury should not have relied on an English translation but on the original tape itself, are also without merit.

If the government's translation was inaccurate, it was petitioner's burden to challenge its accuracy by presenting another translation, so that the jury could choose which version to believe. *United States v. Onori,* 5 Cir., 1976, 535 F.2d 938, 948. As we recently stated in *United States v. Wilson, supra,* 578 F.2d at 70, "Once we have concluded that the defendants could have challenged specific portions of the Government's transcript or prepared an alternate version, it follows that they cannot be heard to complain on appeal because they failed to take advantage of their trial opportunity." [3]

Llinas cites *United States v. Wilson, supra,* to support his argument that use of an English transcription of the Spanish conversation usurped the jury's fact-finding role. It was, he argues, impossible for the jury to "reconcile the discrepancies in the transcript against the recording itself." *United States v. Wilson, supra,* 578 F.2d at 70.

The answer to this argument is that neither *United States v. Wilson,* nor any other Fifth Circuit case known to the court, dealt with the specific question of English translations of foreign language conversations.

*United States v. Onori, supra,* for example, found transcripts useful in ascertaining the contents of inaudible portions of a tape, and in identifying speakers on a tape. *United States v. Onori, supra,* 535 F.2d at 947. The court in *Wilson* identified the same purposes behind use of a transcript. *United States v. Wilson, supra,* 578 F.2d at 69. The language quoted by Llinas was used by the Court in *Wilson* only as a predicate to explain why the trial court need not verify a transcript before submitting it to the jury.[4]

It should be obvious that there is no requirement that the jury understand the language spoken on a tape recording of a conspiratorial conversation. Otherwise, persons would be free to engage in conspiracies in this country without fear that the government could show direct evidence of the conspiracy, as long as the conspirators addressed each other in a foreign language. *See United States v. Desist,* 2 Cir., 1967, 384 F.2d 889, *aff'd on other grounds,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

The proper procedure for the use of transcripts was discussed in *United States v. Onori, supra,* 535 F.2d at 947–49, and is restated in *United States v. Wilson, supra,* 578 F.2d at 69–70 as follows:

> Initially, the district court and the parties should make an effort to produce an "official" or "stipulated" transcript, one which satisfies all sides. If such an "official" transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.

This procedure is well suited to cases such as that before us, where the transcript is an English translation of a foreign language

---

3. The record reveals that appellant did prepare his own translation of the tape, which diverged only slightly from the government's version. This transcript was accepted as a defense exhibit by the court to aid in evaluating the reliability of the tape recording, but was not presented to the jury because appellant failed to produce at trial an interpreter who could attest to the making and the accuracy of the translation.

4. The quotation in full from *Wilson* follows:
   Since the jury must always reconcile the discrepancies in the transcript(s) against the recording itself, the district court need not listen to the tape or decide whether a transcript is accurate before the transcript is given to the jury and the recording is played.
   *United States v. Wilson, supra,* 578 F.2d at 70.

conversation. Such a procedure does not tie a defendant to an "official" transcript prepared by the prosecution, nor does it "usurp" the factfinder's function. If there is a dispute as to the contents of a foreign language recording the burden will lie with the respective parties to present transcripts or other evidence to support their version of the conversation.

In the case at hand, appellant had the opportunity and did in fact produce his own translation of the taped conversations with Riascos. This transcript, however, was not presented to the jury because appellant failed to produce an interpreter who could properly authenticate and verify the translation. Appellant cannot complain on appeal that the jury's fact-finding function was usurped when he failed to present evidence which would have aided the jurors in fulfilling that function.

AFFIRMED.