UNITED STATES of America,
Plaintiff-Appellée,

v.

Leonicio Fernando CRUZ, Orlando Vincent Hernandez, Defendants-Appellants.

No. 84–5189.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1985.

information sought would deny his client the sixth amendment right to counsel.

Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and THOMAS [*], District Judge.

HATCHETT, Circuit Judge:

Appellants, Leonicio Fernando Cruz and Orlando Hernandez, challenge the admissibility of certain evidence and the sufficiency of the evidence to sustain their criminal convictions. We affirm.

## FACTS AND PROCEDURAL HISTORY

In June, 1983, Alejandro Lage a/k/a Alejandra Perrera, a paid government informant, introduced Eddie Benitez, a special agent of the Bureau of Alcohol, Tobacco, and Firearms, to Eduardo Jaime Rouco. Benitez began conducting an undercover investigation of Rouco for weapons violations. On June 10, 1983, Rouco asked Benitez whether he was interested in purchasing a large quantity of cocaine. Rouco stated the cocaine belonged to a friend and agreed to arrange a meeting between Benitez and his friend.

On June 17, 1983, Benitez and Lage met Rouco at a restaurant. Cruz subsequently joined the meeting and told Benitez that he had a friend who would supply Benitez with the cocaine. After discussing the quantity, quality, and price of the cocaine, Cruz invited Benitez to accompany him to get a sample of the cocaine.

Cruz took Benitez to Hernandez's paint and body shop. Rouco and Lage remained at the restaurant. At Hernandez's shop, a small quantity of cocaine was given to Benitez as a sample of the cocaine which Benitez could expect to receive. Benitez, Cruz, and Hernandez discussed the purity of the cocaine and the date on which the transaction would occur. Hernandez instructed

Paul Morris, P.A., Miami, Fla., for O. Hernandez.

Louis Vernell, No. Miami Beach, Fla., for L. Cruz.

Stanley Marcus, U.S. Atty., Linnea Johnson, Linda Collins Hertz, Lee Stapleton,

[*] Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Benitez to telephone him later to confirm the fact that arrangements had been made for the sale.

Benitez and Cruz returned to the restaurant and discussed the purity of the cocaine sample. When the meeting ended, Benitez met his supervising agent, James W. Pherson, and gave Pherson the cocaine sample and one of Hernandez's business cards. Pherson had been outside the restaurant conducting surveillance.

On June 21, 1983, Benitez, Lage, and Jerry Castillo, an undercover special agent of the Drug Enforcement Administration, met with Rouco and Cruz to finalize the details of the cocaine transaction. Benitez introduced Castillo as his partner. After agreeing on a price and experiencing some disagreement as to where the transaction would occur, Rouco and Cruz began to suspect that Benitez and Castillo were federal agents. Cruz decided to "take a chance" with Benitez and Castillo and designated Hernandez's shop as the location for the transaction.

The group later met at Hernandez's shop. Cruz announced that within forty minutes he would receive a telephone call setting up the cocaine delivery. Minutes later Cruz left to get the cocaine. Shortly thereafter, Cruz telephoned the office and told Rouco that police vehicles were in the area, and in a second telephone call postponed the transaction until later that afternoon. Concerned by the change in plans and the possibility that their law enforcement status had been discovered, the agents cancelled the transaction. When Rouco informed Hernandez that the transaction would not be completed, Hernandez appeared upset.

In August, 1983, Cruz and Hernandez were arrested and charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. § 846 (West 1981), and distribution of cocaine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1981 and Supp.1985) and 18 U.S.C.A. § 2 (West

1969).[1] A jury found Cruz and Hernandez guilty as charged.

## CONTENTIONS

The June 17 and June 21 conversations were in Spanish and recorded. The government prepared an English transcript of the June 17 conversations.[2] Both the tape recording and the English transcript of the June 17 conversations were admitted into evidence. At the jury's request, the district court permitted the jury to consider both the tape recording and the transcript during its deliberations. Cruz contends that the district court abused its discretion by permitting the jury to consider the English transcript of the Spanish conversations.

By the time of trial, Benitez was deceased. Over defense objection, the district court permitted both Pherson and Castillo to testify as to whom Benitez had said had given him the cocaine. Cruz and Hernandez contend that the admission of Benitez's hearsay statements violated their sixth amendment right to confront the witnesses against them.

Additionally, Cruz and Hernandez argue that their convictions should be reversed because of insufficient evidence.

Thus, the issues which we address are: (1) the admissibility of the English transcript, (2) the alleged sixth amendment violation, and (3) the sufficiency of the evidence to sustain the convictions.

## DISCUSSION

### I. Admissibility of Transcript

Cruz makes two arguments in support of his contention that the district court erred by admitting the English transcripts of the Spanish conversations into evidence. First, Cruz argues that the transcript should not have been admitted into evidence because of the unreliability inherent in translating

---

1. Rouco was also indicted, but was tried separately.

2. The tape recordings of the June 21 conversations were of such poor quality that the government made no effort to transcribe them.

foreign languages where many words are susceptible of different meanings. Second, Cruz contends that the jury necessarily considered the transcript as substantive evidence rather than as a mere aid for use in listening to the tapes. He argues that because the jurors did not understand Spanish they could not have relied upon the tape recording.

In *United States v. Llinas*, 603 F.2d 506, 509–10 (5th Cir.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762 (1980), we adopted as the proper procedure for challenging the accuracy of an English transcript of a conversation conducted in a foreign language, the procedure first outlined in *United States v. Onori*, 535 F.2d 938, 947–49 (5th Cir.1976).[3] The procedure has been delineated as follows:

> Initially, the district court and the parties should make an effort to produce an 'official' or 'stipulated' transcript, one which satisfies all sides. If such an 'official' transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.

*United States v. Wilson*, 578 F.2d 67, 69–70 (5th Cir.1978), *quoted in Llinas*, 603 F.2d at 509.

█ The district court discussed this procedure with Cruz and offered Cruz an opportunity to submit his own version of the transcript. Cruz's failure to make use of this opportunity was a deliberate tactical decision. Cruz "cannot complain on appeal that the jury's fact-finding function was usurped when he failed to present evidence which would have aided the jurors in fulfilling that function." *Llinas*, 603 F.2d at 510.[4]

█ Cruz's argument that a jury may not rely upon a transcript as substantive evidence is refuted by the case upon which he relies. In *United States v. Onori*, 535 F.2d 938, 947 (5th Cir.1976), the court held that "the use of a transcript as a guide is analogous to the use of expert testimony as a device aiding a jury in understanding other types of real evidence." *Onori* makes clear that transcripts may be used as substantive evidence

> to aid the jury in determining the real issue presented, the content and meaning of the tape recordings.
>
> It is therefore incorrect to think of the transcripts as simply an 'aid'—as better lighting fixtures in the courtroom would be an 'aid' to the jury's vision of witnesses—and not as evidence of any kind. They are evidence and, like other evidence, may be admitted for a limited purpose only.

*Onori*, 535 F.2d at 947.

*Onori* also points out the important role which limiting instructions play in guarding against the jury's misuse of transcripts. *Onori*, 535 F.2d at 949. The district court in this case cautioned the jury as follows:

> What was said at the time it was recorded is what the real evidence is, the transcripts are not. They are merely to help you identify. But in this situation where we have a foreign language tape they also inevitably provide you content of the conversation as well.

---

**3.** Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

**4.** Cruz's complaint is really one of interpretation, not translation. At trial, Cruz emphasized the fact that he never used the word "cocaine," and that the words which the government claimed meant "cocaine," in fact, had other translations. The government claimed that "perico" and "apparatos" were Spanish slang terms for "cocaine." Cruz repeatedly emphasized that "perico" translated to "parrot" and that "apparatos" translated to "device." The government never denied that these were correct translations. The government argued merely that when the parties used these terms, they were referring to cocaine. This was a credibility determination for the jury. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ In an effort to ensure that the jury relied upon the tape recording rather than upon the transcript, the district court went beyond giving a limiting instruction. The district court played the tape recording for the jury and had an interpreter signal the jury when it was appropriate to turn the pages of the transcript. This procedure enabled the jury to detect changes in voice modulation and note any hesitancies or other characteristics which might give meaning to the tape recording. Additionally, the district court assured Cruz that it would not routinely submit either the tape recording or the transcript to the jury for consideration during its deliberations, but would provide them for the jury only upon the jury's request. Under these circumstances, we hold that the English transcript was properly admitted and considered by the jury as substantive evidence.

## II. Sixth Amendment Claim

Cruz and Hernandez contend that Benitez's statements as to the source of the cocaine sample constitute inadmissible hearsay, and that admission of the statements violated their sixth amendment right to confrontation.

The analysis of appellants' confrontation clause claim is governed by *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980):

> When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [Footnote omitted.]

Benitez was deceased by the time of trial and, therefore, unavailable. Thus, we focus upon whether Benitez's hearsay statements bear adequate "indicia of reliability."

The district court admitted Benitez's statements to Pherson and Castillo under the present sense impression exception to the hearsay rule, Fed.R.Evid. 803(1).[5] Cruz and Hernandez argue that Benitez's statements to Pherson and Castillo were not sufficiently contemporaneous with Benitez's receipt of the cocaine to constitute present sense impressions admissible under Fed.R.Evid. 803(1). We agree.

■ The record does not disclose the distances and time lapses between Benitez's receipt of the cocaine and his statement to Pherson. The record does not reflect how long it took Benitez to travel from the restaurant to Hernandez's paint and body shop, engage in conversation with Cruz and Hernandez, obtain the cocaine sample, and return to the restaurant and engage in further conversation, before turning the cocaine and one of Hernandez's business cards over to Pherson. It is clear, however, that Benitez's statement to Pherson was not made immediately following Benitez's receipt of the cocaine. *See United States v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979). Benitez's statement to Castillo occurred even later than the statement to Pherson, apparently days later. Clearly, Benitez's statement to Castillo also lacked the contemporaneity required by Fed.R. Evid. 803(1).

■ We conclude that, under the circumstances, Benitez's statements to Pherson and Castillo as to who had given him the cocaine were not sufficiently contemporaneous with Benitez's receipt of the cocaine to come within the present sense impression exception to the hearsay rule under Fed.R.Evid. 803(1). The lack of consistency in the agents' testimony as to whom

---

5. Fed.R.Evid. 803 provides in pertinent part:

   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   (1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Benitez had identified as the source of the cocaine also illustrates the statements' lack of "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.[6]

■ The admission of Benitez's hearsay statements was error, but the error was harmless. The inquiry under the harmless error doctrine is whether there was "a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963) *quoted in Hutchins v. Wainwright*, 715 F.2d 512, 517 (11th Cir. 1983). We hold that the other evidence against Cruz and Hernandez was sufficient to negate any reasonable doubt whether the erroneous admission of the hearsay statements contributed to their convictions.[7]

### III. Sufficiency of the Evidence

In reviewing appellants' challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and affirm the convictions if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Perkins*, 748 F.2d 1519, 1526 (11th Cir.1984).

■ To establish a conspiracy under 21 U.S.C.A. § 846, the government was required to prove that Cruz and Hernandez entered into an unlawful agreement to violate the narcotics laws, had knowledge of at least the essential objectives of that agreement, and with that knowledge, joined the agreement. *United States v. Blasco*, 702 F.2d 1315, 1330 (11th Cir.), *cert. denied sub nom. Jamardo v. United States*, — U.S. —, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983).

■ In addition to the principal charge of distribution, Cruz and Hernandez were

indicted under 18 U.S.C.A. § 2 for aiding and abetting. To prove the distribution count, the government was required to show that Cruz and Hernandez either distributed the cocaine sample or aided and abetted its distribution. The government chose to proceed under the aiding and abetting theory. Therefore, the government was obligated to establish "that [appellants] 'associated [themselves] with a criminal venture, participated in it as something [they] wished to bring about, and sought by [their] actions to make it succeed.'" *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir.1981) (quoting *United States v. Smith*, 631 F.2d 391, 395 (5th Cir. Unit B 1980)).

■ The government concedes that the tape recordings of appellants' conversations discussing the drug transaction were of poor quality. The tape recordings, however, were not the government's sole, or even strongest, evidence against Cruz and Hernandez. The testimony of paid informant Lage and Agents Pherson and Castillo established the involvement of both Cruz and Hernandez in the drug transaction and was sufficient to support their convictions. These witnesses testified to the meetings and the conversations during which both Cruz and Hernandez discussed the drug transaction.

Lage testified to the conversations which occurred before Benitez and Cruz left the restaurant to obtain the sample of cocaine:

Q   Was there a time when Leonicio Cruz invited Special Agent Benitez to leave the table at the restaurant and go someplace with him?

A   Yes.

Q   Where was Leonicio Cruz taking Special Agent Benitez?

A   He said it was nearby, just across the street. He said they were going to the place where the cocaine, the sample was.

---

6.   Pherson testified that Benitez told him that Cruz had given Benitez the cocaine. Castillo testified that Benitez had told him that Cruz *and* Hernandez had given Benitez the cocaine.

7.   Cruz and Hernandez also allege that the district court erred by denying their motions for

acquittal based upon the erroneous admission of Benitez's hearsay statements. This argument is also without merit since sufficient evidence existed to sustain the convictions. *United States v. Gregory*, 730 F.2d 692, 706 (11th Cir.1984).

Q   Is this Leonicio Cruz talking that he's going to take Eddie where the cocaine is?

A   Exactly.

\* \* \* \* \* \*

Q   I assume you stayed in the restaurant with Eduardo Jaime Rouco while Special Agent Benitez and Leonicio Cruz left, is that correct?

A   Yes.

Q   Do you know where they went?

A   Exactly.  I found out when they returned.

Q   And where did either Eddie Benitez or Leonicio Cruz tell you that they had been?

A   When they returned Leonicio explained that they had made the delivery of the sample.

Q   Leonicio Cruz said this?

A   Leonicio Cruz said that he already has the sample and the agent said yes.

When Cruz and Benitez left the restaurant, they went to Hernandez's shop.  Hernandez's involvement was shown by testimony concerning his statements and activities at the two meetings which occurred at his shop.

Accordingly, the judgments are affirmed.

**AFFIRMED.**