UNITED STATES of America,
Plaintiff–Appellee,

· v.

Pedro GARCIA, Lazaro Lopez, Jaime
Cruz, Joseph Lovett,
Defendants–Appellants.

No. 87–5733.

United States Court of Appeals,
Eleventh Circuit.

Sept. 14, 1988.

Roy J. Kahn, P.A., Miami, Fla., for Garcia.

Lee Weissenborn, Miami, Fla., for Cruz.

Samuel I. Burstyn, Steven I. Taitz, Miami, Fla., for Lopez.

Donald L. Graham, Raskin & Graham, P.A., Miami, Fla., Ellen L. Leesfield, P.A., Coral Gables, Fla., for Lovett.

Dexter W. Lehtinen, U.S. Atty., Anne R. Schultz, Linda Collins Hertz, Harriet R. Galvin, Asst. U.S. Attys., Miami, Fla., for U.S.

Before HILL and ANDERSON, Circuit Judges, and THOMAS *, Senior District Judge.

HILL, Circuit Judge:

In this criminal appeal, we consider whether the admission of a transcript of a tape recorded meeting was error and whether the district court's denial of related motions for continuances and for a new trial was an abuse of discretion. Because we find that the district court's actions were proper, we affirm the convictions of the appellants.

## I. FACTS

Detective Pablo Garcia of the Coral Gables Police Department testified at trial to the following events. On February 9, 1987, Garcia, working under cover, received a telephone call from appellant Lazaro Lopez. Lopez requested a meeting the following day and asked Detective Garcia to bring a sample of cocaine. The next morning, February 10, Lopez called to confirm the meeting and he described the clothing he would be wearing. At approximately 12:00 noon Detective Garcia and a confidential informant met Lopez at the Hilton Hotel near Miami International Airport. Garcia recognized Lopez by his clothing, and the informant introduced the detective to Lopez. In turn, Lopez introduced Detective Garcia to appellant Pedro Garcia.

The four men sat at a table, and Lopez indicated that he had a client interested in purchasing forty kilograms of cocaine. Detective Garcia stated that the price would be $13,500 per kilogram, which Pedro Garcia agreed was a good price. In addition, there was some discussion of the possibility of exchanging cocaine for speedboats which Pedro Garcia described as "pretty fast." Detective Garcia then went outside with Lopez and showed him a kilogram of cocaine from which Lopez took a small sample. At the conclusion of the meeting, Lopez indicated that he would call

Detective Garcia to set up the next meeting.

Lopez called Detective Garcia at approximately 2:00 p.m. and indicated that he had a client who was interested in purchasing six kilograms of cocaine. Lopez wanted the cocaine delivered, and the detective heard Lopez ask a person named "Jaime" for the delivery address. Prior to the scheduled meeting, however, Detective Garcia contacted Lopez through his beeper and asked to change the location of the transaction to the Hilton Hotel. Lopez was initially uncertain whether his associates would agree, but ultimately the parties agreed to an exchange at the hotel. At approximately 5:50 p.m. Detective Garcia met Lopez in the lobby of the Hilton Hotel. Lopez indicated that his clients were waiting in a Bronco in the hotel parking lot. The two men walked to the parking lot and they were met by appellant Garcia along the way. When they reached the Bronco, Pedro Garcia introduced the detective to appellant Jaime Cruz, who was in the driver's seat of the Bronco, and to appellant Joseph Lovett and co-defendant William Jones, who were standing beside the vehicle. The detective also saw co-defendant Samuel Farmer in the back seat of the Bronco.

Detective Garcia discussed the exchange with Jones. Pedro Garcia and Cruz told Jones to show the detective the money. Jones then instructed Lovett to get the pickup truck and bring the money. Lovett left the area on foot and returned in a red pickup truck. Detective Garcia got in the truck with Lovett and the two drove approximately seventy-five feet from the Bronco. Lovett instructed the detective to look out the back window of the truck. Through that window Detective Garcia saw Lovett take apart a rear panel of the pickup truck with a screwdriver and remove a clear plastic bag containing a large sum of currency. Farmer then approached the pickup truck and attempted to calm Lovett, who appeared nervous. The detective left

* Honorable Daniel Holcombe Thomas Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

the pickup truck and indicated that he was going to get the six kilograms of cocaine from his car. At that point an arrest signal was given, and the defendants were taken into custody.

The appellants, Lopez, Garcia, Cruz, and Lovett, were charged, along with Jones and Farmer, with conspiring (Count I) and attempting (Count II) to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Lopez was found guilty on both counts. Pedro Garcia was found guilty on Count I, and the government dismissed Count II when the jury was unable to reach a verdict. Cruz and Lovett were found guilty on Count II and not guilty on Count I. Jones and Farmer were not convicted on either count. Lopez, Garcia, Cruz and Lovett appeal.

## II. DISCUSSION

During his meeting with the appellants in the hotel parking lot, Detective Garcia wore a "body bug" through which the conversations surrounding the transaction were recorded. The primary issues in this appeal involve Detective Garcia's written transcript of that recording. Cruz challenges the admission of the transcript at trial, and Lovett challenges the district court's denial of his motions for continuances and for a new trial which were related to the transcript. We conclude that the admission of the transcript was proper and that the denial of Lovett's motions was not an abuse of discretion.[1]

Trial in this case was originally scheduled to commence on May 19, 1987. The defense received the tape recording of the meeting in the hotel parking lot on March 12. Detective Garcia did not, however, begin work on a transcript of the tape attributing specific statements to particular defendants until May 15. The prosecution provided the defense with Detective Garcia's handwritten transcript on May 18, and on May 19 the government provided a typewritten transcript incorporating one substantive change. The change involved attributing the statement "no seguro" to Lopez rather than Lovett, who does not speak Spanish. The district court held a hearing on May 19 and concluded that the transcript would be admitted. However, in response to a motion by Jones and Lovett, the court granted a continuance until 9:00 a.m. on May 21 in order to provide the defendants with an opportunity to obtain an expert analysis of the transcript's accuracy.

On May 20, Lovett's counsel informed the district court that she would need more time to obtain an expert analysis of the transcript because her expert's equipment was in Michigan and Houston, Texas. Lovett's counsel stated that her expert would not be prepared until May 26. The court refused to grant a further continuance. On May 21, Lovett's counsel renewed her motion for a continuance and the court indicated that she would not be required to present Lovett's defense until May 26. Finally, on May 26 Lovett's counsel informed the court that the tapes which Lovett's expert had mailed to his laboratory in Houston had been lost. The district court refused to grant another continuance.

During the trial, Detective Garcia provided direct testimony describing the activities and conversations which occurred at the meeting in the hotel parking lot. In addition, the tape recording of that meeting was played for the jury. To aid the jury in following the tape, the jurors were provided with Detective Garcia's transcript translating the Spanish into English and identifying the speakers by name. Counsel for the defense cross-examined Detective Garcia on his method of producing the transcript and attacked the reliability and accuracy of his transcript. Attorney Roy Kahn, who represented Pedro Garcia, testified that Detective Garcia had informed him that the quality of the tape was not good and that he could not identify the speakers. While Lovett's expert, Dr. Henry Truby, did not perform a laboratory analysis of

---

1. In addition to the issues relating to the transcript, the appellants raise a variety of contentions which do not warrant discussion. We have carefully reviewed each of those claims and find them to be wholly without merit.

the transcript's accuracy before or during trial, he did testify as to inaccuracies in the transcript and he stated that a spectrogram analysis was very likely to reveal inaccuracies in the transcript. The district court instructed the jury that the tape recording itself was the primary evidence and that the reliability of the transcript was for the jurors to determine themselves. Following the trial, Lovett submitted a motion for a new trial along with an affidavit from Dr. Truby indicating that a laboratory analysis had shown that no statement attributed to Lovett in the transcript was actually made by Lovett. The district court denied that motion.

■ On appeal, Cruz argues that the transcript should have been excluded. Specifically, he claims that he was improperly prejudiced by the portion of the transcript which reads "Jaime in the background." This phrase was apparently intended by Detective Garcia to indicate that Cruz was making some comment or comments which Garcia could not specifically describe. Cruz argues that this statement in the transcript is extremely unreliable and that it unfairly supported Detective Garcia's testimony regarding Cruz' statements which cannot be discerned from the tape itself. Whether or not this element of the transcript is reliable, we conclude that the transcript was properly admitted by the district court.

Our case law provides district courts with the authority to allow juries to read properly authenticated transcripts while listening to taped conversations. *See United States v. Onori*, 535 F.2d 938, 947–49 (5th Cir.1976). We have, in fact, established a proper procedure for the production of transcripts as well as for challenges to the accuracy of transcripts:

> [i]nitially, the district court and the parties should make an effort to produce an 'official' or 'stipulated' transcript, one which satisfies all sides. If such an 'official' transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.

*United States v. Wilson*, 578 F.2d 67, 69–70 (5th Cir.1978). *See also United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985). In this case, while Cruz had access to the tape recording well in advance of the trial, he chose not to submit his own version of a transcript. Instead, the defense focused on challenging the credibility of Detective Garcia's transcript through cross-examination and other evidence. This was a "deliberate tactical decision," *Cruz*, 765 F.2d at 1023, which the defense was entitled to make. The reliability of the detective's transcript was questioned, the district court instructed the jury to rely primarily on tape rather than the transcript, and the transcript was not submitted to the jury during its deliberations. In these circumstances, the admission of the transcript by the district court as an aid to the jurors was proper.

■ Lovett does not challenge the admissibility of the transcript, but argues that the district court improperly denied certain motions for continuances which he sought in order to provide more time for his expert's evaluation of the transcript. As an initial matter, we note that "[t]he granting of continuances is left to the sound discretion of the trial judge, and his decision will not be set aside on appeal absent a showing of a clear abuse of that discretion." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir.1985), *cert. denied*, 475 U.S. 1022, 106 S.Ct. 1214, 89 L.Ed.2d 326 (1986). The following factors are considered in evaluating the propriety of the denial of a motion for a continuance:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. Unit B January 1981) (quoting

*United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir.1976)). *See also Dickerson v. State of Alabama*, 667 F.2d 1364, 1370 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). We conclude that the nature of the additional evidence sought in this case, considered in light of the overall circumstances presented to the district court, supports the court's denial of the motions for additional continuances.

While counsel for Lovett initially sought to exclude the transcript, on May 19 she decided that the best course was to seek additional time in order to obtain an expert evaluation of the transcript. The district court granted a continuance until May 21 at 9:00 a.m. for that purpose. When counsel informed the court that the expert evaluation would not be completed until May 26, the court indicated that she would not be required to present her defense until the 26th. Moreover, the court suggested that her defense could be presented out of order if the other defendants had no objection. On May 26, Lovett indicated that the tapes which her expert needed to perform a spectrographic analysis of the accuracy of the transcript were apparently lost in the mail. The district court refused to grant a further continuance at that point, and Lovett's expert, Dr. Truby, testified about the reliability of Detective Garcia's transcript without the aid of a spectrographic analysis.

Lovett argues that the denial of an additional continuance was an abuse of discretion. We disagree. When the defense indicated that it would need time to obtain an expert evaluation of the transcript, the court granted a brief continuance. When Lovett's counsel indicated that she would need until May 26, the court responded that she would have until the 26th. The district court provided Lovett with a full week to evaluate the accuracy of those portions of the seven page transcript which implicated him. During that time Lovett's expert, Dr. Truby, had an opportunity to hear the tape and evaluate the accuracy of the transcript. He testified that the transcript contained inaccuracies and stated that a spectrogram was very likely to confirm that certain speakers were not the individuals indicated in the transcript. Moreover, counsel for Pedro Garcia offered testimony which impeached the reliability of Detective Garcia's transcript. In addition to this testimony, of course, the defense cross-examined Detective Garcia extensively on the accuracy of his transcript. Thus, the credibility of the transcript was challenged in a variety of ways, and the only effect of the denial of the motions for additional continuances was to deprive Lovett of the opportunity to impeach the credibility of the transcript in yet another way, through additional testimony by his expert describing a laboratory analysis. This is far from the situation in cases such as *Hicks*, 633 F.2d at 1149, or *Dickerson*, 667 F.2d at 1370, where the refusal to grant a continuance prevented the defense from presenting any testimony at all by a particular witness. In this case, Lovett was merely precluded from offering cumulative evidence impeaching the transcript, and the district court's denial of his motions for additional continuances was not an abuse of discretion.

■ Following the trial, Lovett filed a motion for a new trial claiming that a spectrographic analysis of the tape recording revealed that the transcript inaccurately attributed six statements made in the parking lot to Lovett. On appeal, he argues that the district court erred in denying that motion. We disagree. A motion for a new trial is committed to the sound discretion of the district court, and we will not reverse the denial of such a motion absent an abuse of discretion. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985). We have established five elements which must be present in order to justify a new trial:

> (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

*United States v. Bollinger*, 796 F.2d 1394, 1401 (11th Cir.1986), *cert. denied*, ─── U.S. ───, 108 S.Ct. 1737, 100 L.Ed.2d 200

(1988). These elements are not present in this case.

■ The new evidence proffered by Lovett consists of the results of a laboratory analysis of the accuracy of Detective Garcia's transcript. As discussed above, this evidence is merely cumulative and impeaching. The laboratory analysis simply provides an additional method of undermining the credibility of Detective Garcia's transcript which was challenged in other ways. Furthermore, for a variety of reasons this evidence would not be likely to produce a different result in a new trial. First, the reliability of the transcript was questioned at trial through cross-examination of Garcia and through testimony by Dr. Truby and Pedro Garcia's attorney. Second, the district court instructed the jury that the tape itself, rather than the transcript, was the primary evidence. Consistent with this instruction, the court did not submit the transcript to the jury for consideration during its deliberations. And most importantly, there was strong evidence of Lovett's participation which did not rest on the transcript. At trial, Detective Garcia identified Lovett as the individual who left the group to get the pickup truck containing the money. Garcia testified that Lovett pulled apart a panel of the truck and displayed a large amount of currency for the detective. Given this direct evidence of Lovett's substantial participation in the transaction, it is unlikely that the additional evidence bearing on the reliability of the transcript would result in an acquittal. For these reasons, the district court's denial of Lovett's motion for a new trial was not an abuse of discretion.[2]

### III. CONCLUSION

We have reviewed each of the appellants' contentions raised in this appeal and we find them to be without merit. The judgment of the district court is

AFFIRMED.

---

**2.** Because we find that the additional evidence offered by the appellant is cumulative, impeaching, and not likely to produce a different result, we need not decide whether the test results proffered actually constitute "new evidence."