**UNITED STATES of America,**

v.

**Denis YUROFSKY and Alexander Muchnik, Defendants.**

**No. 99 CR 589.**

United States District Court,
E.D. New York.

May 16, 2001.

Andrew J. Weinstein, James M. LaRossa, LaRossa, Mitchell & Ross, New York City, Ellen Sackstein, Sackstein, Sackstein & Sackstein, LLP, Garden City, NY, for Defendant.

## ORDER

GERSHON, District Judge.

Relying on various provisions of the United States Constitution, including the Due Process Clause, the Confrontation Clause, the right against self-incrimination, the right to make a defense and the right to effective assistance of counsel, the defendants, in Rule 33 motions, challenge trial rulings relating to their cross-examination of a government witness who testified as an expert in the translation from Russian to English. The expert testified as to the accuracy of English translations of Russian conversations that had been recorded on tape by a government agent.[1] In effect, the defendants raise a fundamental assault on wise and long-established principles governing the use at trial of translations of foreign language tape recordings. As will be seen, there is no basis to the challenge.

■ The Court of Appeals for the Second Circuit has said on many occasions that, "when litigants disagree as to the precise words on a tape, or as to the accuracy of transcripts, the district court may permit each party to submit an alternative transcript to the jury." *See, e.g., United States v. Chalarca,* 95 F.3d 239, 246 (2d Cir.1996). Indeed, the submission of alternative transcripts has been described as "the proper procedure." *United States v. Chiarizio,* 525 F.2d 289, 293 (2d Cir.1975). The defendants in this case were given every opportunity to use this procedure. To the extent that they failed to offer alternative transcripts at the trial, the "failure to make use of this opportunity was a deliberate tactical decision." *United States v. Cruz,* 765 F.2d 1020, 1023 (11th Cir.1985). *See also United States v. Ben–Shimon,* 249 F.3d 98, 101–02 (2d Cir. 2001) (upholding district court's admission of government's transcript and noting that defendant had failed to prepare a competing transcript).

■ The underlying principles of the cases cited above are fairness to all parties in the use of expert translations and the recognition that it is the tapes themselves

---

1. The tapes themselves were played for the jury during the later testimony of the agent. Although the tapes were largely in Russian, some of the damaging evidence against the defendants appeared on the tapes in English. *See, e.g.,* Gov't Ex. 69C at 8.

that contain the essential evidence: The expert translator is not herself a witness to events but merely a means to make the underlying evidence—the words spoken on the tape recordings—accessible to the jury.

■ Unexpectedly (since the defense had never previously identified any specific complaints about the translations or proffered alternative transcripts despite pretrial orders scheduling dates by which to do so), the cross-examination of the translator by counsel for defendant Yurofsky, Albert Dayan, Esq., went far beyond questioning the witness's credentials, background and biases and included numerous challenges to translations of specific words. The cross-examination became argumentative. It also became clear that Mr. Dayan was basing his questions on his own knowledge of the Russian language; the witness began to use Russian words in answering questions, and Mr. Dayan's argumentative follow-up questions made it apparent that he understood Russian. Compounding the problem was that the initial set of transcripts provided by the government contained both Cyrillic alphabet transcriptions and English translations of the Russian portions of the tapes. The government's expert testified that several translators had worked together to prepare the transcripts and that she was testifying only as to the accuracy of the English translations. Although the witness testified that the English translations to which she was attesting had been taken directly from her listening to the tapes and were not English translations of the Cyrillic writing, Mr. Dayan cross-examined her about disparities between the Cyrillic writing and the English.

As a result, I halted the examination, and lengthy discussions ensued outside the presence of the jury to determine how we should proceed. During these discussions, Mr. Dayan revealed that he had marked the government's transcripts with approximately one hundred claimed mistranslations about which he intended to cross-examine the witness. (Counsel for defendant Muchnik, Robert Koppelman, Esq., has never identified any claimed inaccuracies in the translations.)

Rather than barring Mr. Dayan from raising objections to particular translations to which he had never before objected, I permitted him to raise such objections so long as he first made his objections and proposed translations known to the government so that agreements could be reached where possible. The government then reviewed Mr. Dayan's proposed translations and agreed to approximately 80 of the one hundred changes proposed.

Although his initial cross-examination had been improper, I allowed Mr. Dayan to question the expert about why she changed her mind as to any proposed changes which had been accepted by the government and which related to areas about which he had already questioned the witness. *See* Tr. 2191. However, I did not permit examination as to any of the other approximately 80 changes which the government had accepted. (The government argues that the changes to which they agreed were inconsequential, that is, minor, technical or trivial changes that had no impact on the essential meaning of the words. There has never been a showing that this is incorrect or that any of the changes agreed to by the government were material to the defense or material to the reliability of the translator.)

With respect to the items to which the government did not agree, my direction to Mr. Dayan was as follows: "[Y]ou will be permitted to make inquiry of the translator, but your question will be limited to what she heard on the tape with her ears and whether the English translation is cor-

rect. You will no longer be permitted to ask her questions about the Cyrillic, which is not going to be in evidence and is totally irrelevant." Tr. 2192. The government was directed to revise the transcripts to eliminate the Cyrillic writing to avoid confusion. *See* Tr. 2283–84.

In sum, even though the defense did not offer an alternative transcript or translator, I permitted cross-examination concerning any portion of the government's transcripts as to which Mr. Dayan had proposed an alternative translation (from whatever source he had obtained it) and to which the government did not agree. *See* Tr. 1890–91, 1913–1920.

The defendants' argument that they should have been permitted to cross-examine the government's expert about those changes which the government accepted is meritless. The goal is to provide the jury with an agreed upon transcript if possible. *See Cruz*, 765 F.2d at 1023 ("Initially, the district court and the parties should make an effort to produce an 'official' or 'stipulated' transcript, one which satisfies all sides") (citations omitted). It is implicit in the above-cited cases that, once agreement is achieved pretrial as to the accuracy of some transcript portions, there would be no sound basis to cross-examine the expert as to the accuracy of those portions. That the defense violated the court's pretrial procedural rulings and indicated that there were objections to specific portions of the government's translations only in the middle of the trial does not entitle the defense to more than that to which it would have been entitled had it complied with the pretrial deadlines.

The defense argues that cross-examining the government's translator about the changes that the government accepted would have given it an opportunity to argue that the original translations to which she had testified were wrong and that,

therefore, her testimony should have been rejected as unreliable. Given that the purpose of translations is to achieve accuracy in presenting the underlying evidence to the jury, the probative value of such cross-examination, if any, was overwhelmingly outweighed by its tendency to confuse the issues, mislead the jury and unduly delay a protracted trial. *See* Fed.R.Evid. 403, 611. Meaningless embarrassment and confusion of a witness is not a proper purpose of cross-examination, and that is all that could have been accomplished by cross-examining her on changes to which the government had agreed.

The claim that the defendants' self-incrimination rights were violated is without basis. No one forced the defendants to testify or incriminate themselves in any way. The defense was not *required* to submit alternative translations to the jury, and indeed the defendants did not do so. (Defendant Yurofsky did offer certain tape recordings, and transcripts of those recordings, which had not been offered by the government, on the defense case.) Nor was the defense required to agree to the accuracy of the transcripts. It was simply precluded from suggesting alternative translations to the jury where it had not submitted them first to the government in accordance with accepted procedures. This is not, as the defense claims, a matter of the defendants being required to "assist" the prosecution. The defense was not required to accept the translations as accurate and reliable, but simply was not permitted to argue that words on the tapes meant something other than what the translator said they meant without offering more than the lawyer's views on that subject. Mr. Dayan recognized that he could not proffer himself as an expert witness. As I stated at the trial, there would be no good faith basis for arguing affirmatively what a particular word meant, unless the government witness's

testimony provided a basis for doing so or the defense offered its own expert translation. *See* Tr. 2196–97.

The defense engaged in extensive cross-examination of the government's translator, not only as to her general competence as a translator, *see United States v. Bahadar*, 954 F.2d 821, 830 (2d Cir.1992), but also as to all disputed portions of the transcripts, that is, all of the portions to which the defense noted its objections (as well as portions of the transcripts which were the subject of Mr. Dayan's improper cross-examination before it was stopped, which I characterized as a "windfall," *see, e.g.*, Tr. 2197). The defense had a full opportunity to challenge her credentials, her abilities and any biases. The defense was expressly advised at trial: "You can argue [the jury] shouldn't accept the tapes, they shouldn't accept the transcript, they shouldn't accept the evidence as reliable." Tr. 2198–99. In sum, the defense was permitted to argue that the government's translator was so inadequate that the jury should reject her testimony outright and reject the translations altogether. I expressly instructed the jury at the trial that it was "for you to determine based upon the evidence before you whether and to what extent to accept or reject the transcripts as accurate." Tr. at 2470. *See also* Tr. 5674.

The defendants on these motions fail to identify any curtailment of cross-examination which limited their ability to show that there were, in fact, errors in the translations provided to the jury other than those as to which they had a full opportunity to cross-examine the witness.

For the above-stated reasons, the Rule 33 motions are denied.

**SO ORDERED.**