[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11840

_____

D.C. Docket No. 0:10-cr-60183-JIC-3,

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD PERL,
a.k.a. Eddie Marx,

Defendant - Appellant.

_____

No. 11-11842

_____

D.C. Docket No. 0:10-cr-60183-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW LEVINSON,

a.k.a. Andrew Kennedy,

Defendant - Appellant.

_____

No. 11-11974

_____

D.C. Docket No. 0:10-cr-60183-JIC-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALAN PERL,
a.k.a. Alan Peters,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 11, 2012)

Before DUBINA, Chief Judge, and PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

2

Andrew Levinson, Alan Perl, and Edward Perl (collectively "Appellants") appeal their respective convictions. Alan Perl also challenges the district court's calculation of his sentencing guideline range. After a jury trial, Levinson was convicted of one count of conspiracy to commit wire fraud, thirteen counts of wire fraud, and three counts of mail fraud. Alan Perl was convicted of seven counts of wire fraud. Edward Perl was convicted of eight counts of wire fraud.[1] After review of the record and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

Levinson was the owner, operator, and salesman for Creative Concepts of America Inc. ("Creative Concepts"), a Florida corporation with its principal place of business in Fort Lauderdale. Throughout the entire business operation, Levinson used the name "Andrew Kennedy" with everyone outside the office. The company offered a business opportunity that included selling Red Bull energy drink vending "packages" to customers. These packages included the machines, Red Bull energy drinks, a warranty, and customer service. Between June 2005 and June 2006, Creative Concepts sold more than 900 of these business opportunities with each package costing roughly $4,000 per machine.[2]

---

[1]    Two additional defendants, Corina Guillott and Adriana Mirabal, pled guilty before trial and testified at trial.

[2]    Packages ranged from three machines to fifty machines.

3

Creative Concepts mainly attracted individuals through its website and through sales brochures. A prospective buyer would call a telephone number and speak with an employee known as a "fronter." Fronters answered questions and made arrangements to send the potential customer additional sales material. They were paid based on the number of machines they sold.

After reviewing this information, customers who called back would speak with a "closer" who would try and finalize the deal. Levinson trained and supervised both the fronters and the closers. Often, prospective buyers were given the names of references and were told that these were individuals who had previously purchased from Creative Concepts. Levinson testified that,[3] although he was not directly in charge of references, he knew that the company was giving out references and he knew who they were.

Here is where Edward and Alan Perl become involved. Edward Perl and Alan Perl are brothers and separately acted as references for Creative Concepts. Each used a false name while acting as a reference: Edward Perl was "Eddie Marx" and Alan Perl was "Alan Peters." Seven witnesses testified at trial that they had spoken with both Edward Perl and Alan Perl as references and had purchased

---

[3]     Neither Alan Perl nor Edward Perl testified at trial.

4

packages from Creative Concepts.[4]  Three of these witnesses—Jeffrey Bullinger, John Kendall, and Chris Bernal—took notes that were admitted into evidence recounting their conversations with Edward Perl, Alan Perl, and Guillott (acting under their false names).  These notes indicate that each reference misrepresented the amount of machines that they owned and the amount of Red Bull drinks that were sold from these machines.

## II.  DISCUSSION

Appellants cite numerous errors they believe the district court committed. We address each in turn.

This Court reviews evidentiary rulings for abuse of discretion.  United States v. Brown, 415 F.3d 1257, 1265 (11th Cir. 2005).  Even if an evidentiary ruling constitutes an abuse of discretion, we will only reverse if the error was not harmless.  United States v. Hand, 184 F.3d 1322, 1329 (11th Cir. 1999).  We review findings of fact that support a sentence enhancement for clear error.  United States v. Ladson, 643 F.3d 1335, 1341 (11th Cir. 2011).  Lastly, we review challenges to the sufficiency of the evidence *de novo*, but resolve all reasonable inferences in favor of the jury's verdict.  United States v. Pineiro, 389 F.3d 1359,

---

[4]    Seven of the counts of wire fraud for Alan and Edward Perl were related to these seven witnesses.  Edward Perl was also convicted of one count of wire fraud resulting from his conversations with a government investigator.

5

1367 (11th Cir. 2005).

A.  Exhibits 146 and 146-T

Appellants argue that the district court erred when it excluded a tape recording of a conversation between a government investigator and two Creative Concepts sales employees as hearsay.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Appellants assert that the tape recording was not hearsay because it was not being offered for the truth of the matter asserted.

Appellants argue that the tape was not offered to prove the truth of the relevant matter, but rather only that it was being offered to show that the script (which had already been introduced into evidence as Exhibit 105) was not always used by Creative Concepts' employees.  We doubt there was a hearsay problem at all, but even if there were, we conclude that any error was harmless.  See Hand, 184 F.3d at 1329.  This tape would have established only that the script was not used in one of the very many calls Creative Concepts' employees received and made.  And there was overwhelming evidence that the script was routinely used,[5] that Levinson

---

[5]    Mirabal and Scott Smith, a government contractor who applied for a position at Creative Concepts, both testified that Exhibit 105 was provided to them as a script.

6

knew of that routine use, and that Edward Perl and Alan Perl themselves in fact made representations reflected in the script.  See United States v. Puentes, 50 F.3d 1567, 1578 (11th Cir. 1995) (finding district courts error in admitting evidence was harmless in light of overwhelming evidence of defendant's participation in drug conspiracy).

B.  Exhibits 55, 87 and 141

The district court admitted three exhibits containing notes that witnesses took regarding their conversations with references under the present sense impression exception to the hearsay rule.  Levinson challenges the admissibility of Exhibit 87, which is an email message received by witness John Kendall with handwritten notes taken while he was talking on the phone with references. Levinson also challenges the admissibility of Exhibit 55, which is handwritten notes by witness Chris Bernal.  Lastly, Appellants challenge the admissibility of Exhibit 141, which is handwritten notes by witness Jeffrey Bullinger.

As stated above, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay is presumptively inadmissible barring a hearsay exception.  Fed. R. Evid. 802.  One exception to the hearsay rule is for a present sense impression.  A present sense impression is a

7

"statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Fed. R. Evid. 803(1); see also United States v. Cruz, 765 F.2d 1020, 1024 n.5 (11th Cir. 1985). Appellants argue that these writings were not sufficiently contemporaneous with the phone calls with the references to qualify as present sense impressions.

With respect to the notes taken by Kendall (Exhibit 87), and all but an insignificant part of the notes taken by witness Bullinger (Exhibit 141), there was sufficient evidence for the district court to conclude that these notes were taken contemporaneously with the telephone conversations with the references.  The district court did not abuse its discretion by admitting them pursuant to hearsay exception Rule 803(1).

The same is true with respect to part of the notes taken by Bernal.  The entirety of the notes were properly admitted initially because Bernal's testimony was that the notes were taken contemporaneously during his conversations with the references.  However, on cross-examination, Bernal indicated that the notes on page one of the Exhibit may have been summaries or a consolidation of the information he obtained from his several phone calls with references.  Thus, it is possible that this portion of the notes may not have been sufficiently

8

contemporaneous to qualify under the exception.[6]  Even assuming that, however, we readily conclude that any error was harmless.  The information on page one was testified to by Bernal on the stand, and he was subject to cross-examination.  Additionally, such testimony probably would have been admissible under Rule 803(5)[7] as another exception to the hearsay rule.  Lastly, there was overwhelming evidence admitted at trial that contained almost identical information to that contained on page one of this Exhibit.[8]

C.  Exhibit 132

Levinson challenges the admissibility of a March 2006 unsigned letter from James "Jim" Murphy, director of non-traditional sales at Red Bull, to Levinson.  Levinson argues that admission of this letter violated the best evidence rule.  We conclude that Levinson's challenge is without merit.  Moreover, Murphy testified at trial and was subject to cross-examination; he testified with respect to all relevant matters in this letter.

---

[6]     However, three of the four notations on page two were expressly dated December 12, 2005, the same day the notations on page one of this Exhibit are dated.  This is strong evidence that the summaries on page one were at least written on the same day as the phone calls with the references.

[7]     Federal Rule of Evidence 803(5) sets out an additional exception to the hearsay rule for admission of past recollections recorded.

[8]     The notes and testimony of Bullinger and Kendall contained almost identical information as to how many machines the references (including Alan Perl and Edward Perl) claimed they owned and how many cans of Red Bull they claimed were sold per day.

9

D. Alan Perl's Sentencing Challenge

Finally, Alan Perl challenges his sentence. He argues that the district court clearly erred in finding that there were fifty or more victims of his offenses, thus resulting in a four-level enhancement of his sentence under U.S.S.G. § 2B1.1(b)(2).[9] In light of the fact that every one of the victims (those seeking a reference from Alan Perl and later buying these packages) who answered the questionnaire suffered a loss, and in light of the fact that every victim-witness who testified at trial and about whom we have specific information did in fact suffer a loss, we cannot conclude that the district court was clearly erroneous in finding that there were reasonable inferences that all of the victims who sought a reference from Alan Perl also suffered some loss.

## III. CONCLUSION

For all of the foregoing reasons, we affirm.[10]

AFFIRMED.

---

[9]    Alan Perl does not dispute that he should have at least received a two point increase for a crime with between ten and fifty victims.

[10]    Alan Perl's inconsistent verdict argument is wholly without merit, as are Levinson and Edward Perl's challenges to the sufficiency of the evidence.