The PEOPLE of the State of
Colorado, Petitioner,

v.

The Honorable Philip F. ROAN, District
Court Judge, Adams County
Colorado, Respondent.

No. 83SA514.

Supreme Court of Colorado,
En Banc.

Aug. 20, 1984.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., Brighton, for petitioner.

David F. Vela, State Public Defender, Saskia A. Stephenson, Deputy State Public Defender, Brighton, for respondent.

NEIGHBORS, Justice.

The People, pursuant to C.A.R. 21, request a writ prohibiting the respondent judge from reducing the crime with which the defendant is charged from vehicular homicide to driving under the influence of intoxicating liquor as a sanction for the prosecution's loss of the victim's blood samples. We issued a rule to show cause and now make the rule absolute.

I.

We learn the following facts from the briefs and materials filed with this court. The defendant, Donald Scott Hanson, was charged with vehicular homicide [1] following an automobile-pedestrian accident which occurred on April 27, 1982.[2] An autopsy was performed on the victim, Mark Holley, during which several samples of his blood were collected and each specimen was placed in a separate tube. The coroner

1. Section 18–3–106, 8 C.R.S. (1978 & 1983 Supp.).

2. The information was filed in the Adams County District Court in Criminal Action No. 82CR0469.

sent the samples to Roche Biomedical Laboratory (Roche) where tests were performed on one sample to determine the blood-alcohol content. These tests revealed a blood-alcohol content of .277 grams per deciliter. Roche did not conduct any test to determine the amount of preservative (sodium fluoride) present in the tube which contained the sample tested. Expert testimony indicated that without this test it is impossible to judge whether the blood-alcohol test was accurate.

As a matter of routine practice, Roche returns the blood samples to the coroner who then stores them in a refrigerator. The coroner's records do not indicate whether the samples in this case were returned, although Roche's records reveal that the tubes of blood were returned on August 2, 1982. In June or July of 1983, the coroner's refrigerator was left unplugged and approximately 100 blood samples were destroyed.

Following his arraignment in July of 1982, the defendant filed a motion requesting that the court order the prosecution to preserve a sample of the victim's blood. Apparently, the district attorney conceded the motion without court intervention.[3]

On November 23, 1983, after the defendant learned that the sample of the victim's blood had not been preserved, he filed a motion to dismiss or reduce the charge against him. At the hearing on this motion, the prosecutor stated that he would stipulate that the victim's blood-alcohol content was .277 grams of ethyl alcohol per deciliter at the time of the accident, and that he would not attack the reliability of the blood-alcohol test. He also agreed that the respondent judge could instruct the jury that a person who has a blood-alcohol content of .10 grams or more of ethyl alcohol per deciliter of blood would be presumed to be under the influence of intoxicating liquor.

However, the respondent judge concluded that a more severe sanction than that suggested by the district attorney should be imposed:

I think the question always is what's the least sanction the Court can impose when you have a case where there's been a malfunction of equipment apparently that caused the destruction of the evidence where there is no bad faith on anybody's party [sic] ....

....

Well, I think there has to be a severer sanction than the one [the prosecutor] argues for. If it isn't, it's no sanction at all.

Accordingly, the respondent reduced the charge of vehicular homicide (a class 4 felony) to driving under the influence of intoxicating liquor (a class 1 traffic offense), and ruled that he would permit the district attorney to add the charge of criminally negligent homicide (a class 1 misdemeanor) to the information. Thereafter, the People filed this original proceeding.

II.

The People contend that, in the circumstances of this case, the loss of the blood samples is a harmless violation of the defendant's right to due process and that the charge reduction sanction is unwarranted. The defendant argues that the remedy imposed by the trial court is justified because he has been deprived of relevant evidence concerning an essential element of the charge, the cause of the victim's death.

In determining whether a defendant's due process rights have been abridged by the prosecution's suppression of exculpatory evidence, three factors must be considered: (1) Whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence is exculpatory; and (3) whether the evidence is material to the defendant's case. *People v. Sams*, 685 P.2d 157 (Colo.1984); *People ex rel. Gallagher v. District Court*, 656 P.2d 1287 (Colo.1983); *People v. Holloway*, 649 P.2d 318 (Colo.1982); *People v. Garries*, 645 P.2d 1306 (Colo.1982); *People v. Morgan*, 199 Colo. 237, 606 P.2d 1296 (1980); *Garcia v. District Court*, 197 Colo. 38, 589

---

**3.** The coroner testified that he is required by state law to retain blood samples taken from

victims killed in aircraft and automobile accidents. *See* § 42–4–1211, 17 C.R.S. (1973).

P.2d 924 (1979). In the present case, it is undisputed that all three elements have been met. The People contend, however, that the respondent judge imposed an inappropriate sanction for their violation of the defendant's due process rights.

Our decision in *Sams* is dispositive of the issue in this case. We stated:

> While trial courts retain discretion in fashioning an appropriate remedy for an accused prejudiced by governmental loss or destruction of exculpatory and material evidence, the sanction imposed, at least in the absence of egregious governmental misconduct, should be no more restrictive than is necessary to protect the defendant's constitutional rights. The trial court in selecting a remedy should consider the totality of circumstances and determine whether a particular sanction will serve "the dual purposes of protecting the integrity of the truth-finding process and deterring the prosecutor and the police from destroying material evidence." *People ex rel. Gallagher,* 656 P.2d at 1293.

*Sams,* 685 P.2d at 162 (footnote and citations omitted). The sanction of dismissal is a drastic remedy and should be used only when no other sanction would reach a fair result. *Id.* at 163; *Holloway,* 649 P.2d at 320. Here, as in *Sams,* a remedy less drastic than dismissal or reduction of the charges would have cured the infringement of the defendant's due process rights caused by the loss of the victim's blood samples.

The destruction of the blood samples by the prosecution was not intentional or committed in bad faith. The only prejudice claimed by the defendant is that he is unable to attack the reliability of the blood-alcohol test performed by Roche on the victim's blood.[4] However, this prejudice is substantially alleviated by the prosecution's agreement to stipulate that the victim's blood-alcohol level was .277, that it will not attack or question the reliability of the test which resulted in this determina-

tion, and that the jury could be instructed that the victim was presumed to be intoxicated. It is possible that independent tests performed by the defendant's expert may have shown the victim's blood-alcohol level to be greater than .277. Moreover, if the defendant knew the level of preservative in the blood samples, he could have attacked the reliability of the original test. However, these circumstances do not unduly prejudice the rights of the defendent in light of the excessive amount of alcohol shown to have been present in the victim's blood. Even if the victim's blood-alcohol content was greater than .277, the victim was obviously highly intoxicated.

We hold that the sanction imposed by the respondent judge was more severe than was necessary to protect the defendant's due process rights guaranteed by the United States and Colorado Constitutions.[5] Therefore, the respondent judge abused his discretion by reducing the charge to driving under the influence of intoxicating liquor.

We, therefore, make the rule absolute.

---

4. The defendant has neither argued nor presented evidence that the cause of the victim's death was acute alcohol intoxication.

5. U.S. Const. amend. XIV; Colo. Const. art II, § 25.