The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Lewis Roger MOORE,
Defendant-Appellant.

No. 81CA0826.

Colorado Court of Appeals,
Div. II.

April 18, 1985.

Rehearing Denied May 30, 1985.

Certiorari Pending August 20, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H.

Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Gerald E. Piper, Rachel Bellis, Deputy State Public Defenders, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, Lewis Roger Moore, was charged and convicted of first degree murder after deliberation pursuant to § 18–3–102, C.R.S. (1978 Repl. Vol. 8). He appeals his conviction and sentence on three grounds: (1) that his constitutional right against double jeopardy barred his being brought to trial a second time after the trial court had, *sua sponte,* declared a mistrial and discharged the jury in the first trial; (2) that there was insufficient evidence to establish first degree murder after deliberation; and (3) that the trial court erred in denying his motion to dismiss based on the alleged negligence of the state in allowing potentially exculpatory evidence to be destroyed or removed. We affirm.

On February 19, 1980, defendant was charged by information with one count of first degree murder after deliberation in the death of his roommate. Defendant was arraigned and ultimately entered a plea of not guilty on May 19, 1980.

On August 8, 1980, defendant filed a motion to dismiss alleging that the state, after investigating the purported crime scene, was negligent in allowing it to be burglarized and set on fire by arsonists. Defendant also moved to dismiss on grounds that the state had allowed the remains of the victim to be shipped to the victim's family before the coroner's report stating the cause of death was issued. Following a hearing, the court denied this motion on September 4, 1980.

Trial commenced January 26, 1981. A jury of twelve and three alternates was empaneled and sworn on February 10, 1981. On February 13, certain alleged misconduct on the part of one of the bailiffs was brought to the attention of both attorneys and the court by one of the jurors. An in-chamber hearing was immediately held to determine the impact of the alleged misconduct. After surveying each of the jurors individually, the court gave the defendant an opportunity to move for a mistrial. Defendant declined to so move, and instead moved for dismissal. The trial court denied the motion to dismiss and, on its own motion, declared a mistrial over defendant's objection.

Defendant's retrial commenced March 30, 1981. Defendant moved to dismiss on grounds that the double jeopardy clause of the federal and state constitutions barred his retrial. The court again denied defendant's motion, and the jury returned a verdict of guilty to the first degree murder charge. Subsequently, defendant was sentenced to life imprisonment on the murder conviction.

## I. Double Jeopardy

Defendant first contends that the trial court erred when it, *sua sponte,* declared a mistrial over defendant's objections because the misconduct of the bailiff did not make a mistrial a "manifest necessity." Accordingly, he asserts that his constitutional privilege against double jeopardy barred a retrial. We disagree.

Where prejudicial conduct has occurred which makes it unjust to proceed with a trial, the trial court, on grounds of "manifest necessity," may declare a mistrial even over defendant's objection. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). When the initial trial has been terminated in this manner, the court may order a new trial, and the double jeopardy protection is not applicable.

The doctrine of "manifest necessity" is a court devised standard which guides the court's exercise of discretion in declaring a mistrial over defendant's objec-

tion. *Illinois v. Somerville, supra; United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824); *People v. Baca,* 193 Colo. 9, 562 P.2d 411 (1977). Although the court is not required to make specific findings regarding manifest necessity, the record must provide "sufficient justification" for the court to terminate the proceedings short of a verdict. *Ortiz v. District Court,* 626 P.2d 642 (Colo.1981).

■ Here, upon being alerted to the alleged misconduct, all of the jurors were individually questioned in the judge's chambers. Defendant is confined to a wheel chair, and five jurors testified that they had heard the bailiff say, on the previous evening, that the reason the defendant was disabled was because of a stabbing injury which occurred while he was incarcerated because of a previous offense. One juror indicated that she could not disregard the comment and that it would definitely influence her decision in the case. Two stated that they could disregard the statement although the matter upset them so, that they had trouble sleeping. The juror who initially reported the comment testified that he was shocked but did not indicate whether this would affect his ultimate decision in the case.

In addition, several of the jurors testified that, in contradiction to the direct orders of the court, the bailiff in question had not rendered their television sets inoperable, had not monitored their telephone calls, and had made newspapers available for them to read. The trial court found, in regard to the telephone, television and newspaper improprieties that:

"All these matters, taken as a whole, indicate inappropriate and possible influence of the jury outside the record of the case; notwithstanding the fact that it appears from the jurors comments that these matters individually did not affect their ability to sit in the case and be fair and impartial, the fact remains these incidents occurred, and this potential influence upon the jury is present."

In determining that a mistrial was required, however, the court relied primarily upon the bailiff's comment regarding defendant's prior incarceration. The trial court stated:

"It appears clearly of record that all of the above named jurors were clearly and unequivocally tainted by the conversation, fully appreciated the import of the disclosure, and were previously unaware of the fact disclosed by [the bailiff].... It appears from the court's review that at least five, perhaps six of the fifteen jurors have specific knowledge."

In addition, the court delineated the factors which it considered in reaching the conclusion that it had to declare a mistrial. It concluded:

"The sum and substance of the matter mandates that this Court give consideration to some conduct or prejudice, wherein a reasonable objective is the purpose of assuring the fair trial rights of the defendant and substantial justice. A mistrial may not be granted where this is just whimsical motion or frivolous impulse. Certainly, the Court concludes in this matter that the matters addressed in the findings above are neither whimsical or frivolous. The Court would further conclude that the matters set forth in the findings above are substantial and real, as mandated by the case law, and that they could affect in some way or manner ... the rights of the parties, or could retard or influence to more than a slight degree the administration of an honest, fair, and evenhanded justice for both of the parties here involved, either or both. The Court feels that it has, therefore, within the sincere and reasoned judgment of this Court, the power to declare a mistrial, and that it is mandated that this court exercise its fair discretion in that regard."

■ Improper reference to a defendant's prior conviction or imprisonment during trial, notwithstanding a cautionary instruction, requires a mistrial. *People v. Golds-*

*berry,* 181 Colo. 406, 509 P.2d 801 (1973); *Salas v. People,* 177 Colo. 264, 493 P.2d 1356 (1972). This is especially true if the information is obtained extrajudicially so that the defendant had no opportunity to deny or explain such information. *Perry v. People,* 63 Colo. 60, 163 P. 844 (1917).

■ Where such information comes to the jury's attention from outside of the courtroom, it is not necessary for the court to determine that the extraneous communication in fact prejudiced the jury, as the most sincere juror's statement that he or she would act impartially cannot compensate for factors which inherently produce prejudice. *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *Beeman v. People,* 193 Colo. 337, 565 P.2d 1340 (1977). The fact that a juror assures that the information could be set aside when making a deliberation is not conclusive. *See People v. Botham,* 629 P.2d 589 (Colo.1981).

■ When a trial court concludes, based on the facts and reasonable inferences to be drawn from such facts, that a juror was exposed to information that in the slightest might taint his verdict, it is within the court's discretion to declare a mistrial. *Whitfield v. Warden of Maryland House of Correction,* 486 F.2d 1118 (4th Cir.1973), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *Perry v. People, supra.* Furthermore, if the information conveyed would warrant a reversal if offered directly into evidence a new trial is mandatory. *Quintana v. People,* 158 Colo. 189, 405 P.2d 740 (1965).

■ Here, the mistrial was not declared on the basis of an assumed taint, but rather the court found after personally questioning and observing each of the jurors that the bailiff's comment was, beyond any reasonable doubt, prejudicial, not only to the defendant, but to the prosecution as well. If a mistrial is required by manifest necessity, the public interest in a fair trial and just verdict outweighs defendant's dual interests in proceeding to a verdict or avoiding retrial for the same offense. *People v. Baca, supra.* The court therefore, being in the best position to observe the effect of the communication, in its discretion, declared a mistrial based on manifest necessity. We perceive no abuse of that discretion here. Thus, the second trial did not constitute double jeopardy.

## II. Insufficiency of Evidence

Defendant next argues that there was insufficient evidence to establish that the defendant had committed the offense charged. We disagree.

Several witnesses testified not only to threats by defendant to kill his roommate, but also to his having described how he committed the killing and planned to dismember the body to avoid being found out. Also, the autopsy and other physical evidence was consistent with defendant's claim to having struck the victim from behind.

Here, unlike the circumstances in *Stafford v. People,* 154 Colo. 113, 388 P.2d 774 (1964) relied on by defendant, defendant's intent and deliberation were not implied solely from the act itself, but could be inferred as well from defendant's own admissions to his acquaintances and neighbors.

■ Accordingly, the relevant evidence, both direct and circumstantial, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion that defendant planned and deliberated with intent to kill the victim, and that he was guilty of the charge beyond a reasonable doubt. *People v. Gonzales,* 666 P.2d 123 (Colo.1983); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

## III. Exculpatory Evidence

Defendant next contends that the trial court erred in denying his motion to dis-

miss based upon the destruction of potentially exculpatory evidence as a result of the state's negligence in allowing the purported crime scene to be vandalized and destroyed by arson, and in allowing the victim's remains to be removed from Colorado before the death certificate was issued.

### A. Crime Scene

Defendant argues that the failure of the police to secure and preserve the crime scene, at least until the coroner's report issued, was tantamount to a suppression of exculpatory evidence which violated his due process right. Specifically, defendant contends that the police failed to allow the public defender's investigator to conduct a separate investigation and failed to collect, preserve, and inventory the contents of the medicine cabinet in defendant's bathroom and "various other items on shelves and in storage places" at the crime scene. Defendant contends that such evidence "could have been used" to point to other causes of the victim's death. We disagree.

■ To determine whether a due process violation has occurred based on police or prosecutorial failure to provide defendant with potentially exculpatory evidence, it must be determined: (1) that evidence was suppressed or destroyed by the state; (2) that the evidence was exculpatory; and (3) that the evidence would have been material to defendant's case. *People ex rel. Gallagher v. District Court*, 656 P.2d 1287 (Colo.1983).

■ Defendant relies on *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979) for the proposition that it is the state's duty to preserve evidence known to be material in a criminal case, and that it is tantamount to suppression if the state fails to collect and preserve such evidence which might be favorable to defendant. However, *Garcia*, only requires that if the police collect incriminating evidence, they have a duty to collect and preserve enough of such evidence for defendant's indepen-

dent testing. It does not impose upon the police a duty to inventory completely a crime scene and to procure any and all evidence that might be favorable to defendant.

■ The failure to investigate does not constitute suppression of evidence, *People v. Norwood*, 37 Colo.App. 157, 547 P.2d 273 (1975), nor does the defendant have the right to compel the state to search out and gather evidence in his behalf which might be exculpatory. *People ex rel. Gallagher v. District Court, supra; People v. Roark*, 643 P.2d 756 (Colo.1982).

■ Here, the police investigated the crime scene for nearly one and one-half hours on the morning of December 21, 1979. Each room in the apartment was searched, photographs were taken, and numerous items were seized as potential evidence including a ballpeen hammer, and a reciprocating saw. The coroner's investigator testified that he had examined the contents of the medicine cabinet and noted it only contained vitamins and toiletries not prescription or illegal drugs which might have indicated other causes of death.

Defendant's investigator was present during the search. However, he did not seek to search or conduct his own investigation during or after the police search nor did he request any specific test or evidence be seized at the time the police were making their investigation. At no time after the police search was defendant precluded from access to the scene or from obtaining any evidence seized by the police. In addition, defendant's investigator knew that the apartment had been burglarized several days after the police investigation and also knew that the premises were essentially destroyed by arson on January 12, 1980; however, despite this knowledge, the first request to investigate the premises was not made until January 17, 1980. Thus, under the circumstances here, the police did not suppress or destroy exculpatory evidence, and we conclude, therefore, that defendant

was not deprived of his constitutional right of due process.

### B. Evidence of Cause of Death

██ Defendant also contends that the court erred in denying his motion to dismiss based on the destruction of potentially exculpatory evidence as a result of the coroner allowing the victim's remains to be removed before the death certificate was issued. Defendant argues that the state suppressed evidence by allowing the body to be removed for burial and that the coroner had a duty to store the remains indefinitely until he could notify the defendant to independently examine and test the remains to determine the cause of death. We disagree.

The police discovered the victim's remains on December 21, 1979, and the coroner performed an autopsy sometime between December 23 and December 24. The coroner's conclusions were based on numerous tests conducted on the victim's badly decomposed remains. Based on these tests, the coroner determined that there was no evidence of an aneurysm, tumor, bloodclot, or bleeding in the brain. There was no evidence of neck trauma, such as is caused by asphyxiation or strangulation. There was no damage to the esophagus or stomach, nor were there any pills or poisons discovered in the stomach. Tests for the presence of 200 common drugs revealed that none were present, nor was carbon monoxide or strychnine discovered in the body remains. Finally, although the coroner conceded that an injury found over the victim's left eye could have been caused by a fall, he determined that three other lacerations to the victim's body were not self-inflicted and therefore could have been the cause of death.

On December 24th, the victim's father requested that the remains be sent to Illinois for burial. The remains were thereafter released to the victim's family on December 26th and interred soon after.

The defense knew on December 21st that there would be an autopsy, but neverthe-

less made no request to have its medical experts present with the coroner nor any request to examine the remains separately until February 14, 1980.

The purpose of the destruction of evidence rule is to protect the "integrity of the truth finding process and to deter police misconduct." *People v. Clements,* 661 P.2d 267 (Colo.1983). The release of the body remains here did not amount to police misconduct, nor did it violate the integrity of the truth finding process. The body was available for observation and testing for six days after it was discovered. At no time during this period did defendant request an examination of the remains. Furthermore, the coroner had a statutory duty to deliver the body to relatives or friends who claimed it for burial. Section 30–10–618, C.R.S. (1977 Repl. Vol. 12); § 12–34–202(2), C.R.S. (1978 Repl. Vol. 5).

Nor would the victim's remains have necessarily assisted defendant's expert in rebutting the coroner's conclusion as to the cause of death. Defendant's expert testified that he would have conducted additional tests on the remains. However, there was no indication in the record that any further chemical or drug tests "might" turn up new evidence, or that they were necessary. Thus, there being little possibility that additional evidence could have been found from further tests on the victim's remains, *cf. People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980), we find no error in the court's denial of defendant's motion to dismiss.

Judgment affirmed.

KELLY and STERNBERG, JJ., concur.