The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Robert I. RIVERA, Defendant–Appellant.**

**No. 86CA1792.**

Colorado Court of Appeals, Div. IV.

July 21, 1988.

Rehearing Denied Sept. 8, 1988.

Certiorari Granted (People) Dec. 12, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paul H. Chan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

James F. Dumas, Jr., Aurora, for defendant-appellant.

BABCOCK, Judge.

Defendant, Robert I. Rivera, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possession of a weapon by a previous offender. We reverse and remand for a new trial.

Defendant was charged with conspiracy to commit aggravated robbery, possession of a weapon by a previous offender, and habitual criminality. The trial court granted defendant's motion to sever the charges, and the proceedings were bifurcated. Following defendant's conviction for possession of a weapon, he entered a plea of guilty to the habitual criminal charge. The conspiracy to commit aggravated robbery charge was subsequently dismissed by the trial court.

In November 1985, Richard White was arrested for possession of a weapon by a previous offender. The arresting officer told White that if he would cooperate with the police, the officer would "do what he could" for White. The officer said that he was interested in aggravated robberies allegedly committed by White and the defendant. White told the officer that he needed time to think about the proposal.

Later, unknown to White, the district attorney's office informed the officer that it would not prosecute White for the weapon charge. The officer again spoke with White, further soliciting White's cooperation. The officer assured White that he "would not file the weapons case in return for cooperation." At no time, however, did the officer reveal to White that the district attorney's office had already decided not to prosecute. Relying on the officer's statements, White agreed to assist the police in their investigation of defendant.

At the direction of the police, White contacted defendant and arranged a meeting. Before the meeting, White was outfitted with a wireless microphone and transmitter concealed beneath his clothing. Several officers then escorted White to defendant's residence and monitored the conversation between White and the defendant. However, the officers inadvertently failed to insert a tape in the recorder.

The officers testified that during the course of the conversation they heard a "clicking" sound which they believed to be a handgun. One officer testified that defendant also made reference to a planned armed robbery. A search warrant for defendant's residence was then prepared. When the warrant was executed, the police arrested defendant and his wife and recovered a .22-caliber revolver. At trial, one officer testified that, when arrested, defendant was within "arm's reach" of the revolver. Testimony of a sporting goods store clerk established that several days before the arrest he sold the revolver to defendant's wife, with defendant present and assisting her with the purchase.

I.

Defendant first contends that the trial court erred in denying his motion to suppress the evidence obtained during the monitored conversation, as White's cooperation was involuntary. We agree.

The federal eavesdropping statute, 18 U.S.C. § 2511(2)(c) is analogous to § 18-9-304(1)(a), C.R.S. (1986 Repl.Vol. 8B), stating that it is not unlawful for an individual or a government agent to eavesdrop or monitor a conversation if one of the parties to the conversation consents to the monitoring. *See People v. Palmer*, 652 P.2d 1092 (Colo.App.1982). And, since fed-

eral interpretations of federal statutory provisions are helpful in construing similar state laws, *Millis v. Board of County Commissioners,* 626 P.2d 652 (Colo.1981), we look to such decisions for assistance in resolving the issues presented here.

In order for a party's consent to be valid under 18 U.S.C. § 2511(2)(c), it must be voluntary and uncoerced. *United States v. Kolodziej,* 706 F.2d 590 (5th Cir.1983); *United States v. Osser,* 483 F.2d 727 (3rd Cir.1973). The prosecution has the burden of proving such voluntariness, *United States v. Kolodziej, supra,* by a preponderance of the evidence. *See United States v. Glickman,* 604 F.2d 625 (9th Cir.1979).

■ Ordinarily, to prove voluntariness and consent, it is sufficient for the prosecution to show that the informant engaged in the conversation knowing that it was being monitored. *See United States v. Kolodziej, supra; United States v. Glickman, supra.* However, if, as here, there is an allegation of coercion, the prosecution must show that there have been no undue pressure, threats, or improper inducements. *United States v. Kolodziej, supra; United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976).

■ In this case, the trial court found on supporting evidence that the actions of the police in failing to inform White of the district attorney's decision not to prosecute were "reprehensible and deceitful." Although we are bound by the trial court's findings of fact, we conclude that the evidence is insufficient as a matter of law to sustain the court's ruling that White's consent was voluntary. *See United States v. Kolodziej, supra; see also People v. Quezada,* 731 P.2d 730 (Colo.1987) (an ultimate conclusion of law inconsistent with or unsupported by evidentiary findings is subject to correction by a reviewing court).

An informant's voluntary consent to electronic monitoring is not vitiated by any benefits he may receive, including promises of leniency. *United States v. Horton,* 601 F.2d 319 (7th Cir.1979); *United States v. Scaife,* 749 F.2d 338 (6th Cir.1984). However, the trial court's findings show that White was not merely promised leniency;

rather, the "reprehensible and deceitful" police conduct was an "improper inducement" designed to obtain White's cooperation. *See United States v. Kolodziej, supra.*

Therefore, we hold that there can be no lawful consent secured by fraudulent inducement, and thus, White's decision was not proven to be voluntary by the prosecution. Accordingly, the trial court erred in denying defendant's motion to suppress the evidence obtained by the police during the electronic monitoring. *See* § 16–15–102(10), C.R.S. (1986 Repl.Vol. 8A).

In view of this holding, we do not address defendant's remaining contentions of error regarding the admission of evidence derived from the electronic monitoring.

## II.

Defendant also contends that the evidence was insufficient to support the jury verdict, and thus, his motion for judgment of acquittal should have been granted. We disagree.

Challenges to the sufficiency of the evidence to support a criminal conviction require a reviewing court to determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *Taylor v. People,* 723 P.2d 131 (Colo.1986); *People v. Madson,* 689 P.2d 639 (Colo.App.1984).

Because the evidence gathered during the electronic surveillance should have been suppressed, we must determine whether the prosecution, absent this evidence, met its burden of establishing a prima facie case of guilt. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973); *People v. Madson, supra.*

■ Section 18–12–108, C.R.S. (1986 Repl.Vol. 8B) states, in pertinent part:

"Any person previously convicted of burglary, arson, or a felony involving the

use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit such offenses ... within the ten years next preceding or within ten years of his release or escape from incarceration ... who *possesses*, uses, or carries upon his person a firearm ... commits a class 5 felony." (emphasis added)

"Possession" of a firearm, within the meaning of this statute, is actual or physical control over the firearm. *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979). *See also People v. Rowerdink*, 756 P.2d 986 (Colo.1988). The determination whether a firearm is within one's actual or physical control is a question of fact for the jury. *People v. Garcia, supra.*

■ Here, the record reflects that defendant accompanied his wife when she purchased the revolver, and assisted her with the purchase. Further, the police saw the handgun, in plain view, within "arm's reach" of defendant.

We conclude that these facts alone, viewed in a light most favorable to the prosecution, comprise a prima facie showing of illegal possession of a firearm by defendant. Therefore, defendant is not entitled to a judgment of acquittal.

Because several of defendant's citations of error may recur on retrial, we address them below.

### III.

■ Defendant contends that the trial court erred in denying his motion to dismiss the habitual criminal charge, as one of his previous convictions was invalid. He argues that his plea of guilty to a 1976 charge of aggravated robbery was involuntary and given in violation of his constitutional rights. We disagree.

A guilty plea must be voluntary, with an understanding of the consequences of the plea. *People v. Hrapski*, 718 P.2d 1050 (Colo.1986). In determining whether a guilty plea is made knowingly and voluntarily, no formal ritual need be followed by the trial court. *People v. Hrapski, supra.* However, the defendant must be advised of a factual basis for the plea. Crim.P. 11(b)(6); *People v. Cushon*, 631 P.2d 1164 (Colo.App.1981), *rev'd on other grounds*, 650 P.2d 527 (Colo.1982). Further, defendant must also be apprised of the critical elements of the offense. *People v. Weighard*, 709 P.2d 81 (Colo.App.1985).

Here, the transcript of the 1976 providency hearing reflects that defendant was fully advised by the trial court of the nature and elements of aggravated robbery. Defendant acknowledged that he understood the nature and elements of the crime and stated his desire to plead guilty and waive his right to a jury trial. The trial court then iterated the factual basis for the charge, and defendant acknowledged those facts. Finally, defendant stated that he was entering his guilty plea "freely and voluntarily" and remarked that "nobody's forcing me to do anything."

The record establishes that defendant's 1976 conviction was valid. The trial court did not err in denying defendant's motion to dismiss the habitual criminal charge.

### IV.

■ Defendant next asserts that the trial court erred in denying his motion to dismiss based on the police officers' failure to tape record the monitored conversation. He argues that the failure to record the conversation between White and himself constitutes a destruction or suppression of material evidence and, therefore, a denial of his due process rights. We are not persuaded.

Mere failure to investigate does not constitute suppression of the evidence. *People v. Moore*, 701 P.2d 1249 (Colo.App. 1985). Absent a showing of bad faith, the defendant does not have the right to impose a duty upon investigators to gather evidence on defendant's behalf which might be exculpatory. *People v. Roark*, 643 P.2d 756 (Colo.1982); *People v. Moore, supra. See also People v. Vigil*, 718 P.2d 496 (Colo.1986).

■ Here, there was no indication of bad faith on the part of the police officers. The officers testified that they did not realize

that a recording tape had not been placed in the electronic device until White was walking towards defendant's house. They also testified that they could not have recalled White without revealing his cooperation with them. Additionally, two officers testified that they listened to the entire conversation through their car radio and later prepared a written account of the conversation that was admitted at trial.

Defendant's reliance on *People ex rel. Gallagher v. District Court*, 656 P.2d 1287 (Colo.1983) is misplaced. *Gallagher* and its progeny address circumstances in which government investigators have first procured evidence and later lost or destroyed it. *See People v. Greathouse*, 742 P.2d 334 (Colo.1987); *People v. Sheppard*, 701 P.2d 49 (Colo.1985). By contrast, here, the evidence in a tape-recorded form was never acquired, and further, the monitored conversation occurred before defendant's arrest. *See People v. Pope*, 724 P.2d 1323 (Colo.1986).

Moreover, the sanction of dismissal is a drastic remedy and should be used only when no other sanction would reach a fair result. *People v. Roan*, 685 P.2d 1369 (Colo.1984).

Even if the record supported defendant's contention that the officers suppressed exculpatory evidence, suppression of the evidence pertaining to the monitored conversation would cure any infringement of defendant's due process rights caused by loss of evidence. *See People v. Sams*, 685 P.2d 157 (Colo.1984); *People v. Roan, supra.* Such a sanction is consistent with our earlier conclusion that the monitored conversation should have been suppressed because White's cooperation was not voluntary.

## V.

Defendant's final contention is that the trial court erred in failing to read a requested cautionary instruction to the jury prior to the admission of certain evidence. We disapprove of the trial court's procedure in this regard.

Before admitting evidence of a criminal act separate and distinct from the crime for which defendant is being tried, the trial court must, on request by either party, instruct the jury regarding the limited purpose for which the evidence may be considered. *Callis v. People*, 692 P.2d 1045 (Colo.1984). Our supreme court has construed this requirement strictly, suggesting that the best procedure is for the trial court, *sua sponte*, to give a limiting instruction to the jury whenever prejudice may arise by virtue of the admission of evidence of other offenses. *See Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959).

Here, the prosecution indicated its intention to introduce evidence of a conspiracy to commit aggravated robbery. Defendant objected, and the trial court agreed to give a limiting instruction before the introduction of evidence pertaining to the conspiracy. Defendant submitted a written instruction, which was approved by the trial court and the prosecution. Thereafter, the trial court gave the instruction a number of times upon the request of both parties. However, as the trial progressed, the court became increasingly reluctant to read the instruction before introduction of the conspiracy evidence.

Finally, the trial court refused altogether to give the instruction. The prosecutor then began to give the instruction to the jury, and was interrupted by the court, who gave an erroneous instruction, spontaneously and without regard for the proper written instruction.

The trial court should have given the proper limiting instruction when requested rather than tendering the erroneous, spontaneous instruction to the jury. Because we are remanding for a new trial, we do not reach the issue whether this constituted reversible error.

We decline to address defendant's remaining contention as it is unlikely to recur on retrial.

The judgment is reversed and the cause is remanded for a new trial.

CRISWELL and JONES, JJ., concur.