The PEOPLE of the State of
Colorado, Petitioner,

v.

Robert I. RIVERA, Respondent.

No. 88SC497.

Supreme Court of Colorado,
En Banc.

May 14, 1990.

Rehearing Denied June 18, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paul H. Chan, Asst. Atty. Gen., Denver, for petitioner.

James F. Dumas, Jr., Aurora, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *People v. Rivera,* 765 P.2d 624 (Colo. App.1988), the Court of Appeals held that the trial court erroneously denied the motion of defendant Robert I. Rivera to suppress evidence obtained from an electronic monitoring of a conversation between Rivera and Richard White. The Court of Appeals held that the decision of White to participate in the electronic monitoring was not voluntary and therefore was ineffective pursuant to section 16–15–102(10), 8A C.R.S. (1986). In so doing, the Court of Appeals reversed a jury verdict finding Rivera guilty of possession of a weapon by a previous offender, in violation of section 18–12–108, 8B C.R.S. (1986). We granted certiorari to consider the question of whether White voluntarily consented to participate in the monitored communication with Rivera within the requirements of section 18–9–304, 8B C.R.S. (1986).[1] We reverse and remand with directions.[2]

I

Rivera was convicted for possessing a .22–caliber revolver seized by police officers during a search of Rivera's residence.

A warrant for the search had been obtained on the basis of an affidavit reciting that on November 18, 1985, in an electronically recorded conversation, Rivera and White discussed a planned armed robbery. Prior to trial Rivera moved to suppress any evidence concerning the November 18 conversation on the ground that White's participation constituted eavesdropping pursuant to section 18–9–304, 8B C.R.S. (1986). The People opposed the motion on the ground that White's participation did not constitute eavesdropping because he had voluntarily consented to the electronic monitoring of the conversation.[3]

At the suppression hearing, three police detectives testified with respect to the conversation between White and Rivera. In addition, White filed an affidavit in which he denied that he participated in a monitored conversation.[4] The trial court found that the officers had monitored the conversation by means of an electronic recording device affixed to White prior to the commencement of the discussion. Concluding that White voluntarily consented to participate in the electronically recorded conversation, the trial court denied Rivera's motion to suppress.

In reaching its decision, the trial court entered several pertinent findings of fact. Those findings essentially establish that on November 18, 1985, Denver Police Department detective Mark Vasquez arrested White for the offense of possession of a weapon by a previous offender. While confined in the Denver City Jail pursuant to that arrest, White initiated a conversation with Vasquez, asked what he might do to "get out of" his difficulties, and suggested

1. The statute was amended in 1989. Ch. 148, sec. 91, § 18–9–304, 1989 Colo. Sess. Laws 820, 841.

2. Upon his conviction for possession by a previous offender, Rivera entered a guilty plea to the charge of habitual criminal, pursuant to § 16–13–101, 8A C.R.S. (1986).

3. The statute prohibited the introduction of evidence obtained by eavesdropping, and defines eavesdropping as follows:
    (1) Any person not visibly present during a conversation or discussion commits eavesdropping if he:

    (a) Knowingly overhears or records such conversation or discussion without the consent of at least one of the principal parties thereto....
§ 18–9–304(1)(a), 8B C.R.S. (1986).

4. The conversation was not preserved because no tape was inserted in the electronic recorder. Although White admitted that he conversed with Rivera on November 18, he denied that a potential burglary was discussed and denied that the conversation had been monitored.

that he had information concerning two amphetamine dealers. Vasquez replied that he was interested in information concerning Rivera's participation in aggravated robberies, that he could make no promises, but that if White cooperated he would talk to the district attorney. White indicated that he needed to think about the matter, and the conversation ended.

Vasquez next spoke with White on the morning of November 18. Prior to that time, Vasquez had learned that the district attorney had refused to file the possession of weapon charge against White.[5]

Vasquez testified that he took White into an interview room and asked if White had thought about the matter; that White said "yes," indicated that he was willing to cooperate, and that he knew Rivera was in the process of planning a robbery. On cross-examination, Vasquez testified that he told White on November 18 that he would guarantee that the weapons charges would not be filed but that he did not reveal the district attorney's decision. He also testified that White understood that Vasquez would not file the possession of weapon charge "in return for cooperation in the Robert Rivera investigation."

The trial court found that White was promised leniency; "that the leniency promised was initially that the officer would recommend to the prosecution that they be lenient with him if he cooperated and Detective Vasquez after learning that the district attorney's office had failed to file the possession of a weapon by a previous offender charge against the defendant for a lack of evidence then advised Ricky White, the informant, that he would guarantee that the charges would not be filed." The trial court later categorized Vasquez' discussion with White as "a deceitful but knowledgeable statement ... that the pending case against [White] would be dismissed." Finally, the court stated that "from the totality of the circumstances by not only the preponderance of the evidence

but by clear and convincing evidence ... there was no coercion, threats of penalty to the informant to obtain his consent and that there was a promise, even though a deceitful one, but a promise...." The court then concluded that White had voluntarily consented to participate in the monitored conversation with Rivera.

On appeal, the Court of Appeals acknowledged that it was bound by the trial court's findings of fact but concluded that the evidence was insufficient as a matter of law to sustain the trial court's ultimate finding that White's consent was voluntary. The Court of Appeals held that there can be no lawful consent secured by fraudulent inducement, and that therefore the prosecution had failed to sustain its burden of proof by a preponderance of the evidence that White's decision was voluntary.

## II

The General Assembly has adopted a comprehensive wiretapping and eavesdropping statute regulating the manner in which information may be obtained by means of electronic monitoring devices. §§ 16–15–101 to –104, 8A C.R.S. (1986). The act authorizes an aggrieved person to request suppression of the content of any intercepted oral communication or evidence derived therefrom if the communication was unlawfully intercepted. § 16–15–102(10), 8A C.R.S. (1986). Rivera's suppression motion was premised on this statutory provision. Whether Rivera's conversation with White was unlawfully intercepted depends on whether White's conduct constituted eavesdropping as defined in section 18–9–304, 8B C.R.S. (1986).[6]

In *People v. Morton*, 189 Colo. 198, 539 P.2d 1255 (1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976), we recognized that under section 18–9–304(1)(a), no unlawful interception occurs if one party to an electronically monitored conversation voluntarily consents to such monitoring. *Id.*, 189 Colo. at 201, 539 P.2d

---

5. Vasquez testified that the basis for the district attorney's decision was the district attorney's opinion that the evidence was insufficient for conviction.

6. Certain exceptions to this offense are contained in § 18–9–305, 8B C.R.S. (1986).

at 1258.[7] *See also People v. Palmer,* 652 P.2d 1092 (Colo.App.1982). Section 18–9–304(1)(a) parallels 18 U.S.C. § 2511(2)(c) of the federal eavesdropping statute, which states as follows:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c). The federal statutory scheme has been upheld in the face of constitutional challenges based on the fourth and fifth amendments to the United States Constitution. *E.g., United States v. Hodge,* 539 F.2d 898 (6th Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. O'Neill,* 497 F.2d 1020 (6th Cir.1974); *United States v. Cafero,* 473 F.2d 489 (3d Cir. 1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2622, 41 L.Ed.2d 223 (1974); *United States v. Tortorello,* 480 F.2d 764 (2d Cir.1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86. *But see Kirk v. State of Louisiana,* 526 So.2d 223 (La.1988) (Louisiana statute prohibiting private citizens from obtaining evidence by electronic recording of conversations without the consent of all participants but allowing police officials to obtain evidence in such manner upon the consent of one participant violates equal protection guarantees of the United States and Louisiana constitutions). In *People v. Velasquez,* 641 P.2d 943 (Colo.1982), *cert. denied,* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 this court held that section 16–15–102(10) which permits electronic surveillance of conversations in the absence of a warrant upon the agreement of one of the parties thereto, did not violate the prohibition against unreasonable searches and sei-

zures contained in the Colorado Constitution, article 2, section 7. Rivera does not challenge the validity of our eavesdropping statute on federal or state constitutional grounds.

Although this court has not previously had occasion to examine directly the consent requirement of section 18–9–304(1)(a), 8B C.R.S. (1986), numerous federal decisions have established a framework of jurisprudence under 18 U.S.C. § 2511(2)(c) upon which we may draw for guidance. Valid consent under the federal statute requires that a party's consent be voluntary and uncoerced. *United States v. Kolodziej,* 706 F.2d 590, 593 (5th Cir.1983); *United States v. Juarez,* 573 F.2d 267, 278 (5th Cir.1978), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262; *United States v. Osser,* 483 F.2d 727, 730 (3d Cir.1973), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321. The government has the burden of proving voluntariness, and may in general satisfy that burden by introducing sufficient evidence to establish that the informer proceeded with the transaction after understanding what the nature of the transaction would be. *United States v. Jones,* 839 F.2d 1041, 1050 (5th Cir.1988), *cert. denied,* 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230; *United States v. Kolodziej,* 706 F.2d at 593; *see United States v. Bonanno,* 487 F.2d 654, 658–59 (2d Cir. 1973). When an allegation of coercion is raised, however, the government must establish by a preponderance of the evidence that the consent was not the product of coercion, threats, undue pressure or improper inducements by police officials. *See United States v. Kolodziej,* 706 F.2d at 593; *United States v. Juarez,* 573 F.2d at 278; *United States v. Kirk,* 534 F.2d 1262, 1274 (8th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581. Wheth-

---

**7.** A large number of states have adopted statutes that authorize electronic monitoring of conversations in the absence of a warrant if one of the parties to the conversation consents to such monitoring. *See, e.g.,* Ala.Code § 13A–11–30 (1975); Alaska Stat. § 42.20.310 (1989); Ariz. Rev.Stat.Ann. § 13–3005 (1989); Cal.Penal Code § 633.5 (West 1989); Conn.Gen.Stat. § 53a–187 (1989); Del.Code Ann. tit. 11, § 1335 (1989); Ga.Code Ann. § 16–11–66 (1988); Haw.Rev.Stat.

§ 803–42(b)(3) (1989); Ky.Rev.Stat.Ann. § 526.010 (Michie/Bobbs–Merrill 1985); Mass. Ann.Laws ch. 272, § 99(B)(4) (West 1989); N.Y. Penal Law § 250.00(6) (McKinney 1988); Utah Code Ann. § 76–9–401 (1953). Other states, however, require consent of all parties to the conversation in the absence of a warrant. *See, e.g.,* Ill.Ann.Stat. Ch. 38, para. 14–2 (Smith–Hurd 1989).

er consent is voluntary must be determined on the basis of the totality of the factual circumstances surrounding the informant's agreement. *United States v. Kelly,* 708 F.2d 121, 125 (3d Cir.1983), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258; *United States v. Sanford,* 673 F.2d 1070, 1072 (9th Cir.1982); *United States v. Kirk,* 534 F.2d at 1274.

Federal courts have also recognized that consent to participation in an electronically monitored conversation frequently will be given by an informer who seeks to obtain reciprocal benefits for his or her conduct. *United States v. Bonanno,* 487 F.2d at 658. Thus, the fact that an informer anticipates favorable treatment or leniency in return for his or her cooperation does not in general render consent involuntary. *United States v. Jones,* 839 F.2d at 1050; *United States v. Salisbury,* 662 F.2d 738, 740 (11th Cir.1981), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982); *United States v. Moskow,* 588 F.2d 882, 891 (3d Cir.1978); *United States v. Gladney,* 563 F.2d 491, 493 (1st Cir.1977). Even an outright promise of immunity from prosecution in return for an informant's cooperation in conducting electronic monitoring need not render the informant's consent to such surveillance involuntary. *See United States v. Dowdy,* 479 F.2d 213, 229 (4th Cir.1973), *cert. denied,* 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56; *United States v. Silva,* 449 F.2d 145, 146 (1st Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972).

■ The standards developed by the federal courts for assessing the validity of a party's consent to the electronic monitoring of a communication appear appropriate for assessing the validity of consent with regard to the applicability of our eavesdropping statute.[8] We therefore hold that, for purposes of section 18–9–304(1)(a), 8B C.R.S. (1986), the People must establish by a preponderance of the evidence that one of the parties to an electronically monitored conversation voluntarily consented to such monitoring. We further hold that the party's consent may not be the product of threats, coercion, undue influence or improper conduct by government officials. Any challenge to the voluntary nature of a party's consent must be determined on the basis of the totality of the relevant circumstances.

■ We also note that an informant's expectations of leniency, even when generated by promises of intervention by police officials, need not render an otherwise valid consent involuntary for purposes of our statute. *See United States v. Jones,* 839 F.2d at 1050; *United States v. Gladney,* 563 F.2d at 493; *United States v. Dowdy,* 479 F.2d at 229; *United States v. Franks,* 511 F.2d 25, 31 (6th Cir.1975), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693. When a potential informant offers assistance in the hope of receiving leniency, the informant will necessarily continue to hope for favorable treatment by police or prosecutorial officials. A rule denying such officials the opportunity to benefit from the services of such a willing informant would substantially inhibit legitimate investigations of criminal conduct. Only when consent is the product of improper police conduct, such as coercion or promises which have no realistic basis in fact, is the consent involuntary for purposes of our statute. *United States v. Jones,* 839 F.2d at 1050; *United States v. Horton,* 601 F.2d 319, 322–23 (7th Cir.1979), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197; *United States v. Kolodziej,* 706 F.2d at 595.

We also recognize that the standards for resolving the question of whether a party's consent is voluntary for purposes of our eavesdropping statute are less stringent than the standards applicable to questions of voluntariness arising in the context of alleged violations of constitutional rights. In the latter class of cases, a defendant's actions usually result in the acquisition by

8. Other state courts construing state laws similar to 18 U.S.C. § 2511(2)(c) have also referred to federal decisions to guide them in determining what constitutes voluntary consent. *Commonwealth v. Clark,* 516 Pa. 599, 533 A.2d 1376 (1987); *State v. Eldridge,* 749 S.W.2d 756 (Tenn. Crim.App.1988).

the government of evidence directly adverse to the defendant or someone closely connected to the defendant. However, a consensual agreement to participate in electronic eavesdropping need not involve any negative consequences to the consenting party, especially when that party participates in the communication with prior knowledge that it will be monitored. *United States v. Bonanno*, 487 F.2d at 658; *see United States v. Edmond*, 718 F.Supp. 988, 992 (D.D.C.1989); *United States v. Cafaro*, 480 F.Supp. 511, 521 (S.D.N.Y.1979). While our eavesdropping act is designed to protect the privacy rights of individuals, *see United States v. McNulty*, 729 F.2d 1243 (10th Cir.1983), we believe the lesser standard is warranted in interpreting the consent exception to its applicability.

█ In this case, the Court of Appeals observed that "there can be no lawful consent secured by fraudulent inducement" and concluded that White's consent to participate in the electronic recording of his conversation with Rivera resulted from Vasquez' fraudulent statement. *People v. Rivera*, 765 P.2d at 627. We fully concur that fraudulent police conduct can never be condoned. However, we do not agree that whenever a fraudulent statement is made by police officials during the course of negotiations with an informant concerning participation in electronic eavesdropping, any consent by the informant to such participation must be deemed involuntary as a matter of law. As we have indicated, the voluntariness of a party's consent to electronic monitoring of conversations must be determined on the basis of all of the circumstances surrounding the agreement in question. The issue posed by this case is whether, in view of all the circumstances, White's conduct was obtained as the result of Vasquez' improper conduct.

█ The trial court recognized that although Vasquez' conduct was improper, resolution of the question of whether White voluntarily consented to participate in the electronic recording of his conversation with Rivera required an assessment of

all of the circumstances surrounding the two meetings between Vasquez and White. The trial court concluded that although Vasquez neither threatened nor coerced White, a deceitful promise was made. The evidence supports that finding; Vasquez acknowledged that his guarantee that no charges would be filed against White was deceitful and that he did not tell White all that he knew.[9]

The trial court ultimately stated that Vasquez' deceitful promise did not "vitiate" White's consent. The Court of Appeals apparently construed this statement to reflect a conclusion by the trial court that promises of leniency by police officials, even when deceitful, can never render a party's consent involuntary for purposes of our eavesdropping statute. Such a per se rule would be incompatible with the totality of circumstances test we have adopted. However, a reading of the trial court's order as a whole, convinces us that the trial court applied the appropriate totality of circumstances test to the facts.

We also conclude that the record supports the trial court's ultimate finding that the People established by a preponderance of the evidence that White's consent was voluntary for purposes of our eavesdropping statute. White initiated a discussion with Vasquez during which White requested lenient treatment in return for his assistance in the investigation of criminal conduct. *United States v. Baynes*, 400 F.Supp. 285 (E.D.Pa.1975). When Vasquez stated that he would speak to the district attorney if White assisted in an investigation of Rivera's conduct, White asked for and obtained a period of time to consider whether he would participate in the electronically monitored conversation. *United States v. Jones*, 839 F.2d at 1051; *United States v. Kolodziej*, 706 F.2d at 595; *United States v. Llinas*, 603 F.2d 506, 508 (5th Cir.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762 (1980). In view of the trial court's conviction that the People had established voluntariness by clear and convincing evidence, it is reasonable to

9. Rivera does not contend that Vasquez' failure to carry out his agreement to speak with the

district attorney constitutes improper police conduct.

conclude that the trial court determined that Vasquez' deceitful statement did not influence White's decision because White had decided to participate in the proposed monitored transaction before Vasquez made the deceitful remark. The record supports such a determination, and we find no basis in the record to overrule it on appeal.

In our view, the trial court applied the appropriate test and its findings and conclusions are supported by the record. We therefore reverse the judgment of the Court of Appeals and remand the case to that court for review of other issues raised by Rivera's appeal of his conviction.[10]

The judgment is reversed and the case is remanded to the Court of Appeals with directions to conduct further proceedings in accord with this opinion.

LOHR, J., dissents.

QUINN, C.J., and ERICKSON, J., join in the dissent.

Justice LOHR dissenting:

The majority holds that the trial court applied the proper standards in determining that informant Richard White voluntarily consented to the electronic monitoring of a conversation between him and the defendant, Robert I. Rivera, and therefore Rivera's motion to suppress evidence obtained from such monitoring was properly denied. I respectfully dissent and would remand the case to the trial court for application of the proper test.

Prior to trial on criminal charges, the defendant moved to suppress evidence obtained by electronic monitoring of a conversation between him and Richard White. The defendant based this motion in part on section 16–15–102(10), 8A C.R.S. (1986), which provides, as relevant here, that an "aggrieved person ... may move to suppress the contents of any intercepted ... oral communication, or evidence derived therefrom, on the grounds that: The communication was unlawfully intercepted,...." For the purpose of section 16–

15–102(10), an oral communication is unlawfully intercepted if it is obtained by eavesdropping, in violation of section 18–9–304(1), 8B C.R.S. (1986). *People v. Morton,* 189 Colo. 198, 201, 539 P.2d 1255, 1258 (1975). Section 18–9–304(1) provides in pertinent part:

Any person not visibly present during a conversation or discussion commits eavesdropping if he:

(a) Knowingly overhears or records such conversation or discussion without the consent of at least one of the principal parties thereto, ...

The issue in this case is whether White, who was a principal party to the conversation, voluntarily consented to the electronic monitoring. *See Morton,* 189 Colo. at 201, 539 P.2d at 1258.

The majority adopts a test for determining the voluntariness of consent to the electronic monitoring of a conversation for purposes of applying the eavesdropping statute, § 18–9–304, 8B C.R.S. (1986), drawn from the corresponding federal standard. As I understand the majority, when a defendant seeks to suppress evidence pursuant to section 16–15–102(10), 8A C.R.S. (1986), on the ground that the government did not obtain the voluntary consent of one of the parties to the electronically monitored conversation, the burden is on the People to establish by a preponderance of the evidence that, based on the totality of the circumstances, one of the parties did voluntarily consent to such monitoring. A party's consent is not voluntary for the purposes of making this determination if it is the product of threats, coercion, undue influence or improper conduct by a government official. A good faith promise to the allegedly consenting party by a government official to seek leniency or other concessions with respect to criminal charges pending against the consenting party does not vitiate an otherwise valid consent. On the other hand, when consent "is the product of improper police conduct, such as coercion or promises which have no realistic basis in fact," maj.

**10.** Those issues include allegations of error by the trial court in instructing the jury, in denying

an evidentiary objection raised by Rivera, and in denying Rivera's motion for mistrial.

op. at 790, it is involuntary for purposes of applying section 18–9–304. I agree with the foregoing standards.

As the majority acknowledges, the issue presented by the motion to suppress is whether White's consent to the electronic monitoring of a conversation with the defendant was the product of detective Vasquez's improper conduct in promising White that the charges against him would be dropped if he gave his consent, when in fact the district attorney had already decided not to file charges regardless of whether White consented. If this promise were the motivating factor, White's consent would not be voluntary, for it would be based on a promise having no realistic basis in fact. The trial court's rulings do not convince me that it applied this component of the voluntariness test.

> The trial court began by finding that Richard White was wired for sound ... he consented to ... being wired for sound; ... he was promised leniency; ... the leniency promised was initially that the officer would recommend to the prosecution that they be lenient with him if he cooperated and Detective Vasquez after learning that the District Attorneys Office had failed to file the possession of a weapon by a previous offender charge against [White] for a lack of evidence then advised ... White that he would guaranty that the charges would not be filed.
>
> The Court finds this act on the part of the detective ... reprehensible and deceitful, but in and of itself would not affect the law....

The trial court then embarked on a lengthy recitation of the federal caselaw governing voluntariness of consent in the electronic monitoring context.

The trial court's actual application of the test to the issue of the voluntariness of White's consent is by contrast quite cursory, consisting entirely of the following findings:

> the Court finds from the totality of the circumstances by not only the preponderance of the evidence but by clear and convincing evidence that there was no coercion [or] threats of penalty to the informant to obtain his consent and that there was a promise, even though a deceitful one, but a promise, does not vitiate his consent. The Court finding there was consent to the conversation the Motion to Suppress based on lack of consent is denied.

In my view, the latter findings may be read to equate detective Vasquez's "deceitful promise" with a legitimate promise of leniency for purposes of determining the voluntariness of White's consent. I see no basis for the majority's assumption, derived from these rulings, that the trial court "determined that Vasquez' deceitful statement did not influence White's decision because White had decided to participate in the proposed monitored transaction before Vasquez made the deceitful remark." Maj. op. at 792.[1]

I would reverse the judgment of the court of appeals and direct that the matter be returned to the trial court with directions to determine based on the existing record whether under the totality of the circumstances White's consent was induced by detective Vasquez's improper conduct in making a deceitful promise. If White's consent was improperly induced, the defendant's judgment of conviction should be reversed; if not, it should be affirmed. Accordingly, I respectfully dissent.

QUINN, C.J., and ERICKSON, J., join in this dissent.

---

**1.** The Colorado Court of Appeals held that the trial court erred in denying the defendant's motion to suppress because "there can be no lawful consent secured by fraudulent inducement." *People v. Rivera*, 765 P.2d 624, 627 (Colo.App. 1988). I agree with this principle, as the majority apparently also does. *See* maj. op. at 791. I am unable to determine, however, whether the trial court in fact found that White's consent was the product of the fraudulent promise and therefore would remand for further findings.