UNITED STATES of America

v.

Rayful EDMOND, III, et al.,
Defendants.

Crim. No. 89–0162.

United States District Court,
District of Columbia.

Aug. 22, 1989.

Jay B. Stephens, U.S. Atty. by Betty Ann Soiefer, Robert G. Andary and Barry M. Tapp, Asst. U.S. Attys., for the U.S.

Cynthia W. Lobo, Washington, D.C., for defendant Melvin Butler.

Retna Pullings, Washington, D.C., for defendant Jeffrey Thompson.

Nina Kraut, Washington, D.C., for defendant Rayniece Edmond Thompson.

Idus Daniel, Washington, D.C., for defendant Katrina Wade.

Michelle A. Roberts, Washington, D.C., for defendant Patrick McDonald.

Thomas Slawson, Washington, D.C., for defendant Bernice Hillman–McGraw.

Robert Werdig, Washington, D.C., for defendant David McGraw.

Joseph Conte, Washington, D.C., for defendant Jerry Millington.

Leonard Long, Washington, D.C., for defendant John Monford.

Robert Sanders, Washington, D.C., for defendant Armaretta Perry.

W. Gary Kohlman, Washington, D.C., for defendant Constance Perry.

Sol Rosen, Washington, D.C., for defendant Melvin Stewart.

Diane Lepley, Washington, D.C., for defendant Emanuel Sutton.

Ernest W. McIntosh, Washington, D.C., for defendant Willie Childress.

Catherine Brown, Washington, D.C., for defendant Keith Cooper.

Arthur Levin, Washington, D.C., for defendant Columbus Daniels.

William Garber, Washington, D.C., for defendant Rachelle Edmond.

William Murphy, Baltimore, Md., for defendant Rayful Edmond, III.

Vincent Bowers, Washington, D.C., for defendant Ronald Green.

Joseph Virgilio, Washington, D.C., for defendant Robert Hardy.

Elise Haldane, Washington, D.C., for defendant James Antonio Jones.

Leroy Nesbitt, Washington, D.C., for defendant Tony Lewis.

John Drury, Drury and Brennan, Washington, D.C., for defendant Deatria Lindsay.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

The defendants have moved to suppress various wiretap tapes. With this memorandum and order the Court considers two components of that motion: (1) the request to suppress all tapes of conversations obtained pursuant to judicial authorization under 18 U.S.C. § 2511(2)(a)(ii)(A); and (2) the request to suppress all tapes recorded pursuant to the consent of a participant under 18 U.S.C. § 2511(2)(c).[1] The Court took evidence and heard arguments on the motions at various points during an omnibus motions hearing held August 3–9, 1989.[2] The Court will address the defendants' arguments relating to the above issues in turn.

1. *Suppression of Judicially Authorized Wiretap Tapes*

On August 16, 1988, United States District Judge Joyce Hens Green authorized the electronic surveillance of two telephone numbers in the District of Columbia. These numbers were subscribed to a defendant in this action, Armaretta Perry, and to another woman not named as a defendant. Judge Green's authorization rested upon an affidavit prepared and submitted by a Special Agent with the Drug Enforcement Administration, John Cornille. The application (of which the affidavit was a part) had been authorized on August 15 by Mark Richard, a Deputy Assistant Attorney General in the Criminal Division of the Department of Justice.

Richard authorized the wiretap application pursuant to 18 U.S.C. § 2516. That statute permits "any Deputy Assistant Attorney General in the Criminal Division", such as Richard, to authorize an application for a wiretap so long as he or she has been "specially designated by the Attorney General" as having the authority to do so. *See* § 2516(1). Richard derived his authority from Order No. 1162–86, signed by Attorney General Edwin Meese III on December 12, 1986. That Order expressly authorized

---

**1.** This memorandum and order does not address the following: (1) the defendants' challenge to the sufficiency of the affidavit submitted in support of the wiretap application; and (2) the defendant Edmond's motion to suppress a tape of a conversation held at the office of the United States Attorney in January, 1989.

The Court will entertain these motions in a separate writing.

**2.** The motions hearing dealt with a variety of different motions from the 22 defendants, including severance and suppression of statements and physical objects.

"any Deputy Assistant Attorney General of the Criminal Division, to exercise the power conferred by Section 2516(1) of Title 18, United States Code." When the prosecution sought an extension of Judge Green's August 16 Order, another Deputy Assistant Attorney General, John C. Keeney, relied upon the same Order in authorizing the extension on September 14, 1988.

The defendants challenge this authorization process on two fronts. First, they question the signatures on the authorizations themselves. They suggest that, in fact, neither Richard nor Keeney actually signed the authorizations, and that if they did sign them they may not have done so with the "mature judgment" called for under the circumstances.[3] Second, they challenge the Attorney General's authorizing Order, upon which both Richard and Keeney relied in approving the wiretap applications. The defendants contend that because Attorney General Meese left office (and was succeeded by Attorney General Thornburgh) on August 12, neither Richard nor Keeney enjoyed authority to approve wiretaps until expressly granted permission by Attorney General Thornburgh. And because Attorney General Thornburgh did not sign an approval Order of his own under § 2516(1) until May 24, 1989—some nine months after taking office—the defendants argue that Richard's and Keeney's wiretap authorizations on August 15 and September 14, respectively, lacked the re-

quired approval of the then-incumbent Attorney General, Richard Thornburgh.

 The defendants' first argument clearly fails. The government proffered the originals of the authorizing documents at the hearing. The Court's review of these original documents makes clear that they were not, as the defendants' memoranda suggest, rubber-stamped. Instead, they were actually signed by real people. And the defendants have offered nothing to suggest that the real people who signed the documents were not, in fact, Mark Richard and John Keeney. Counsel for the defendants, arguing in support of their right to call and examine these individuals at the motions hearing,[4] cited bureaucratic inefficiencies and alleged underhandedness as grounds for doubting the validity of the signatures. In the Court's view, however, some threshold showing of irregularity is required before government officials may be forced to authenticate their signatures on official documents. Were the showings here sufficient to cast aspersions on official documents, the Government would be paralyzed; its officials would be endlessly occupied by the need to testify at the behest of opposing lawyers. The absurdity of the result the defendants seek, at least in light of the preliminary showing they have made (or *not* made), is manifest. *See United States v. De La Fuente*, 548 F.2d 528, 531–35 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).[5]

**3.** The defendants point to *United States v. Giordano*, 416 U.S. 505, 515–16, 94 S.Ct. 1820, 1826–27, 40 L.Ed.2d 341 (1974), in which the Supreme Court stated that "the [wiretap statute] plainly calls for the prior, informed judgment of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop. The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." The defendants suggest that in the context of this case, there is no evidence that the application authorization is a product of the "mature judgment" of a "responsible" Department of Justice official.

**4.** The Court quashed a subpoena issued at the defendants' request which would have required both Richard and Keeney to testify as to the authenticity of their signatures and as to the

thought processes which preceded their affixation.

**5.** The Court gives no weight to the defendants' contention regarding the "spirit" in which both men signed the authorizations. Notwithstanding the defendants' utter absence of proof, this factor is irrelevant to the validity of the authorization. If, in fact, both men signed the authorization in a frivolous manner, i.e., without exercising the "mature judgment" sought by the statute, or if wiretap applications were routinely authorized in this way, the structure of § 2516(1) would come into play: the "publicly responsible official subject to the political process" would be held accountable. *See United States v. Giordano*, 416 U.S. at 520, 94 S.Ct. at 1829 (quoting Senate Rep. No. 1097, 90th Cong., 2d Sess., 96–97 (1968) U.S.Code Cong. & Admin. News 1968, pp. 2112, 2185, 2186). The Court, however, does not accept that the absence of

■ The defendants' second argument is unavailing as well. The fact that Richard and Keeney were operating pursuant to an Order issued by departed Attorney General Meese in no way vitiates their authority. The clear weight of the case law supports this proposition, and the defendants tilt at windmills by arguing otherwise. *See United States v. Lawson,* 780 F.2d 535, 539 (6th Cir.1985) (authorization signed by Attorney General Civiletti in 1981 permitted Assistant Attorney General under Attorney General Smith to approve application in 1983); *United States v. Kerr,* 711 F.2d 149, 151 (10th Cir.1983); *United States v. Terry,* 702 F.2d 299, 311 (2d Cir.1983); *United States v. Messersmith,* 692 F.2d 1315, 1316–17 (11th Cir.1982); *United States v. Wyder,* 674 F.2d 224, 226–27 (4th Cir.), cert. denied, 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *United States v. Todisco,* 667 F.2d 255, 259 (2d Cir.1981), cert. denied, 455 U.S. 906, 102 S.Ct. 1250, 1251, 71 L.Ed.2d 444 (1982).

The only arguable source of support for the defendants' position is *United States v. Robinson,* 698 F.2d 448 (D.C.Cir.1983). In *Robinson,* the defendant-appellant presented the Court of Appeals with the same argument offered here: that any application approved pursuant to an ex-Attorney General's authorization is without effect. The Court of Appeals in *Robinson,* while expressing some concern, declined to suppress the challenged wiretaps.[6] The rationale underlying the Court of Appeals' concern, however, is somewhat opaque. On the one hand, the Court appears to have found no violation of § 2516(1). The Court concluded that because Attorney General

Litvack was a "clearly identifiable and politically accountable person within the Justice Department," his authorization "adequately satisfie[d] the purposes of the statutory provision." *Id.* at 452. Yet, in the immediately following paragraph, the Court stated that "since the delay in revalidation was relatively brief and since the purposes of the statutory requirements were adequately served, we will not overturn the District Court's denial of appellant's motion to suppress." *Id.* The Court's latter observation seems to suggest that, in fact, a violation had occurred, but that because it was of a technical nature the remedy of suppression would be disproportionate to the harm suffered.

Although this Court is more comfortable with the view expressed in decisions such as *Lawson, supra,* which conclude that no violation has occurred under these circumstances, it is nevertheless apparent from the facts presented here that the violations, even if they occurred, were *de minimis* under *Robinson* and do not require suppression. The first authorization here took place on Monday, August 15, 1988—the first working day after Attorney General Thornburgh took office. The second authorization occurred on September 14, 1988, some 32 days after Thornburgh's ascent. In *Robinson,* by contrast, the challenged authorization occurred 30 days after the change in administrations.[7] Thus, the authorizations challenged in this case fall easily within the scope of permissible delay defined in *Robinson;* as in *Robinson,* the remedy of suppression would be disproportionate to the harm suffered, if indeed harm has been suffered.[8] The defendants'

"mature judgment" would invalidate an application in a particular case.

6. In *Robinson,* Attorney General Benjamin Civiletti authorized Assistant Attorney General Sanford Litvack to approve applications on January 19, 1981. William French Smith replaced Civiletti as Attorney General on January 22, 1981. Assistant Attorney General Litvack then approved the challenged wiretap application on February 19, 1981, eight days before Attorney General Smith renewed Litvack's authorization. *See* 698 F.2d at 451–52.

7. If the defendant's concern is for a possible change in wiretap policy as a result of a change

in Attorneys General, it is significant that both Attorney General Meese and Attorney General Thornburgh were Republicans appointed by President Reagan.

8. Defendants make much of the fact that Attorney General Thornburgh did not revalidate the authorization until May 24, 1989, some nine months after taking office. Yet, the emphasis upon this nine-month period is misplaced, at least in the context of this case. The operative period—to the extent *any* delay is legally significant—is the period between Attorney General Meese's departure and the dates of Richard's and Keeney's authorizations. The approximate-

motion to suppress on these grounds will be denied.[9]

### 2. Tapes Recorded Pursuant to the Consent of a Participant

Section 2511(2)(c) of Title 18 provides that a wire communication may be recorded where "one of the parties to the communication has given prior consent to such interception." Here, the government intends to introduce at trial recordings of conversations conducted by three government informants. The defendants with whom these informants conversed now challenge the informants' "consent" to the taping of the conversations.

The Court heard testimony from police officers and agents of the Drug Enforcement Administration regarding the circumstances surrounding the taping of the conversations. From this testimony, the Court is satisfied that the informants did indeed "consent" to the taping of the conversations within the meaning of § 2511(2)(c), and that the defendants' motion to suppress must be denied.

The defendants' first contention goes to the nature of the testimony adduced at the hearing. The defendants argue that the Court cannot evaluate the question of consent in a meaningful way without hearing from the informants themselves. They posit that because the Court heard only from the law enforcement officials who supervised the recordings, the Court cannot possibly appreciate the pressures which led to the informants' "consent."

■ This argument misunderstands the test for "consent" in the wiretap context, and the evidentiary principles that flow from that standard. The substantive test for consent is not, as the defendants' argument would suggest, similar to that used to gauge a defendant's waiver of a constitutional right. See, e.g., Schneckloth v. Bus-

tamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (test for consent in the constitutional context). Rather, the test for consent in the wiretap context is considerably less rigorous: an individual need only proceed despite his or her understanding that the conversation is being recorded. See United States v. Fuentes, 563 F.2d 527, 533 (2d Cir.1977) ("[i]t will normally suffice [to prove consent] for the government to show that the informer went ahead with a [conversation] after knowing what the law enforcement officers were about") (quoting United States v. Bonanno, 487 F.2d 654, 658–59 (2d Cir.1973). Promises of leniency—i.e., "coercion" through promises of favorable treatment should a defendant cooperate—do not vitiate consent under the wiretap statute. United States v. Juarez, 573 F.2d 267, 278 (5th Cir.1978).

■ This substantive standard both informs the nature of the evidence that will be adequate to address a motion to suppress, and, as applied in this case, makes clear that the defendants' motion should be denied. The lenient substantive standard permits proof by circumstantial evidence. As articulated by Judge Friendly in Bonnano, the lower substantive standard reflects the fact that, unlike consent to a search, an informer's consent to a wiretap does him or her no additional harm: it is merely "an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him." 487 F.2d at 658. Thus, testimony regarding consent is sufficient if it shows that, in fact, the informer's actions were taken in furtherance of the "course of cooperation." Testimony of this type is nearly analogous to the testimony of a witness to a physical event, such as an automobile accident. In this context, the

ly eight months between the last authorization, on September 14, 1988, and Attorney General Thornburgh's revalidation on May 24, 1989, is without relevance to this matter.

9. The defendants also move to suppress certain portions of the wiretap tapes on the ground that the recording officers did not properly "mini-

mize" their intrusion into the defendants' conversations. The Court has considered the written submissions, has heard testimony and has considered the arguments of counsel. The Court finds no grounds for pretrial suppression, although it will be vigilant at trial as to the relevance of certain portions of the tapes.

occurrence of that event—the perpetuation of the course of cooperation—can easily be shown by circumstantial evidence from the agents who witnessed the consent. Testimony from the informants themselves, while perhaps helpful, is not required.

The testimony of the agents in this case makes clear that each informant understood very well "what the law enforcement officers were about." Each seems to have assumed that cooperation with the government might prove rewarding, but again, this does not vitiate consent. The agents' testimony, even after cross-examination, clearly shows that each informant undertook each challenged conversation in a fully cooperative fashion, understanding the consequences, and as part of a larger course of cooperation with the government.[10] The agents' testimony, notwithstanding its circumstantial nature, is fully adequate to establish the informants' consent to the wiretaps for purposes of § 2511(2)(c).

█ The defendants make an additional argument on the question of consent. They contend that because Maryland law requires the consent of both parties before a conversation may be recorded, and it is undisputed here that only one party consented in each taped conversation, those conversations involving a Maryland number must be suppressed. They argue that whenever state law provides greater protections for constitutional interests than federal law, state law must control.

The defendants' argument either overlooks or ignores the body of settled precedent which provides that evidence obtained by federal officials in violation of state law is admissible in federal court if all federal requirements have been complied with. *See, e.g., United States v. Daniel,* 667 F.2d 783, 785 (9th Cir.1982) ("The wiretap evidence was secured [by federal agents] in conformity with the Constitution and federal law. There is no basis for excluding

it."); *United States v. Infelice,* 506 F.2d 1358, 1365 (7th Cir.1974) ("The question of admissibility does not turn upon whether evidence was obtained in violation of state law. Federal law governing the admissibility of evidence in federal criminal trials permits the introduction of such tape recordings."). Indeed, recent authority indicates that federal law determines admissibility even when *state officials* have seized evidence in violation of *state law,* but the evidence is sought to be introduced in connection with a federal prosecution. *United States v. Pforzheimer,* 826 F.2d 200, 202–04 (2d Cir.1987). *Cf. Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.").

These principles dispose of the defendants' argument. Regardless of whether the evidence was acquired solely by federal or state officials, or whether its manner of acquisition ran contrary to the laws of Maryland, its admissibility is to be determined in accordance with federal law. And because the Court has already determined that the conversations were properly recorded under § 2511(2)(c), the defendants' motion to suppress on this ground shall be denied.

In light of the foregoing, it is, by the Court, this 22nd day of August, 1989,

ORDERED, that the defendants' motion to suppress various wiretap tape recordings on the ground that the authorizations therefore were invalid shall be, and hereby, is denied; and it is further

ORDERED, that the defendants' motion to suppress various wiretap tape recordings resulting from the purported consent

---

10. The defendants sought to examine one informant in order to establish a history of psychiatric instability. Even if established, however, such a history would be of little value when contrasted with the testimony of a DEA agent that, on the evening in question, the informant, fully composed, agreed with little hesitation to record a telephone conversation with one of the defendants.

of any party to those conversations shall be, and hereby is denied.